# Ford *v.* The State.

*Indictment for Murder.*

1. *Organization of jury; sufficiency of order directing sheriff to serve defendant with copy of indictment and copy of list of jurors.*—Where an order of arraignment, after fixing the date for the trial and reciting that the court had drawn, as required by law, the names of thirty persons, who, together with the regular jurors for the week in which the day of the trial was set, were to constitute the special venire of the court, then orders the sheriff "to serve the defendant with a copy of the indictment in this case and a copy of the list of the names of the persons constituting the jurors for the trial of this case, at least one entire day before the day set for the trial;" such order to serve the defendant with a copy of the indictment and a copy of the names of the jurors

[Ford v. The State.]

appearing in the record, is a sufficient compliance with the statute (Code, § 5273).

2. *Homicide; variance between indictment and proof; idem sonans.*
Where in an indictment for murder, the name of the deceased is averred to be "Ad Smith *alias* Age Smith," and the evidence shows that the deceased's name was Adger Smith, but that he was generally known and called *Adge* Smith, there is no fatal variance between the averments of the indictment and the proof as to the name; such names being *idem sonans.*

3. *Same; charge of court to jury.*—Upon a trial under an indictment for murder, a charge is erroneous and properly refused, which instructs the jury "that before they can find the defendant guilty as charged in the indictment they must believe beyond a reasonable doubt and to a moral certainty and to the exclusion of every other reasonable hypothesis that the defendant at the time of the killing had the specific intent to take the life of the deceased, and that such specific intent to take the life of the deceased by the defendant was deliberately formed and that the defendant acted upon this deliberately formed intent when he did take the life of the deceased."

4. *Same; same.*—On a trial under an indictment for murder charges invoking the doctrine of self-defense, but which pretermit all reference to freedom from fault in provoking or bringing on the difficulty, are misleading and properly refused.

5. *Same; same.*—On a trial under an indictment for murder, a charge is properly refused which instructs the jury that "If the jury believe that the accused was not free from fault in bringing on the difficulty but abandoned the same in good faith and that the deceased began open hostile demonstrations toward the defendant and that the defendant had no reasonable means of escape left open to him without greatly endangering life or suffering grievous bodily harm, then they must acquit the defendant."

6. *Same; charge as to self-defense.*—On a trial under an indictment for murder, a charge which invokes the doctrine of self-defense, but which does not include within its instruction the element of retreat necessary to sustain such a plea, is erroneous and properly refused.

7. *Homicide; admissibility of evidence relating to flight.*—On a trial under an indictment for murder, where the evidence for the State shows that after inflicting a mortal wound upon the deceased the defendant fled from the scene of the killing and went to the home of a friend, the fact that when he reached the home of his friend the latter had a Winchester

and drew the same and stopped the crowd that was follow-
ing the defendant from further pursuit of him, is admis-
sible; such evidence being competent as part of the *res
gestae* of the defendant's flight.

APPEAL from the Circuit Court of Coffee.

Tried before the Hon. A. H. ALSTON.

The appellant was tried under an indictment which charged that he "unlawfully and with malice afore-thought killed Ad Smith, alias Age Smith, by shooting him with a pistol," etc., was convicted of murder in the second degree and sentenced to the penitentiary for forty years.

The order of arraignment, after reciting that the court fixed a specified day for the trial of the defendant and in the presence of the defendant, drew, in accordance with law, thirty names of persons as special jurors and issued an order to the sheriff to summon said persons, who, together with the regular jurors for the week, were to constitute the special venire for the trial of the defendant, then continues as follows: "And the court ordered the sheriff to serve the defendant with a copy of the indictment in this case and a copy of a list of the names of the persons constituting the jurors for the trial of this cause at least one entire day before said Wednesday, the 7th day of·March, the day set for the trial of this cause, all of which was done, and the said jurors were selected and summoned in the manner re-quired by law and according to the law and made to appear to the court."

On the trial of the cause, the evidence for the State tended to show that the defendant and the deceased were walking along a public road, the defendant being a little behind the deceased, that all at once the de-fendant ran up behind the deceased, grabbed him by the shoulder, jerked him around and·began shooting him, and that the deceased died from the wounds so in-flicted by the defendant. There was also evidence in-troduced on the part of the State that after the killing of deceased, the defendant fled and went towards the house of one Jim Suggs, and as he fled he was pursued by several persons. Henry Ellis, a witness for the

State, testified that he was near the house of Jim Suggs at the time the difficulty occurred between the defendant and the deceased; that a few minutes after the shooting the defendant came running to where Jim Suggs was, and there was a crowd pursuing him; "that the defendant got behind Jim Suggs and that Jim Suggs had a Winchester rifle and drew the same and stopped the crowd and held them at bay." The defendant ob- jected and moved to exclude from the jury that part of the testimony of this witness which is quoted above upon the ground that it was immaterial, irrelevant and in- competent evidence. The court overruled the objec- tion, and the defendant duly excepted.

The evidence for the defendant tended to show that several hours before the difficulty, as the deceased was passing by the defendant's house, he fired a pistol, and that upon defendant com- ing to his door and asking who did the shoot- ing, the deceased said that he did it, and upon the defendant telling him that he did not like it, he replied, he could not help it; that later during the day the de- ceased and the defendant met in a public road and the de- ceased asked the defendant if he did not like his shoot- ing in front of his house, and upon the defendant say- ing he did not, the deceased drew his pistol and pro- posed to shoot it out with the defendant; that the de- fendant told him he did not want any trouble, and started off towards his home; that the deceased fol- lowed him, cursing and abusing him, and said that he was going to kill him; that upon the deceased present- ing his pistol at the defendant the defendant wheeled around and drew his pistol and fired upon the deceased, inflicting the fatal wounds. The deceased also shot the defendant in the difficulty. The other facts of the case relating to the name of the deceased and the rulings of the court in reference thereto are sufficiently stated in the opinion.

Upon the introduction of all the evidence the de- fendant requested the court to give to the jury the fol- lowing written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that before they can find the defendant guilty as charged in the indictment they

[Ford v. State.]

must believe beyond a reasonable doubt and to a moral certainty and to the exclusion of every other reasonable hypothesis that the defendant at the time of the killing had the specific intent to take the life of the deceased, and that such specific intent to take the life of the deceased by the defendant was deliberately formed and that the defendant acted upon this deliberately formed intent when he did take the life of the deceased." (2.) "Before the jury can convict this defendant they must believe from the evidence that the name of the deceased was Age Smith, and not Adge (Ag) Smith." (3.) "If the evidence in the case shows that the name of the deceased was Adge (Aj) Smith then the jury must acquit the defendant." (4.) "The court charges the jury that the three letters A-g-e do not spell Adge (Aj—Ag) or Adjie and, therefore, the defendant should be acquitted." (5.) "If the jury believe from the evidence that the deceased made the first hostile demonstration by presenting a deadly weapon at the defendant, and if the accused was in such proximity as that he would be put at a disadvantage by undertaking to escape, then the law would not require him to do so, but the defendant would have the right to stand his ground and resist the attack even to the extent of taking the life of his assailant." (6.) "If the jury believe that the accused was not free from fault in bringing on the difficulty but abandoned the same in good faith and that the deceased began open hostile demonstrations toward the defendant, and that defendant had no reasonable means of escape left open to him without greatly endangering his life or suffering grievous bodily harm, then they must acquit the defendant." (7.) "If the jury believe from the evidence that the defendant was not free from fault in bringing on the difficulty but abandoned the same in good faith and after such abandonment that the defendant at the time of the fatal act was surrounded by such circumstances as to have created in his mind a reasonable belief well founded and honestly entertained of his own present and immediate peril and of an urgent necessity to take the life of his assailant as the only alternative of saving his own life or preventing grievous bodily harm (and of the existence of these facts the jury are the judge) then they must acquit."

[Ford v. The State.]

(8.) "If the jury believe the defendant at the time of the fatal act was surrounded by such circumstances as to create in his mind a reasonable belief or to such ordinary appearance that his life was in immediate imminent peril or that he was in danger of suffering grievous bodily harm and had no other reasonable means of escape, then they must acquit him if he was free from fault in bringing on the difficulty." (9.) "If the jury believe from the evidence that the deceased made the first hostile demonstration by presenting a pistol at the defendant and if the accused was in such proximity to the deceased as to render it hazardous to attempted flight or if the assault was made with a deadly weapon and was open and direct and in perilous proximity, then the law would not require the accused to endanger his safety by attempting flight." (10.) "If the jury believe the evidence they must acquit the defendant."

Espy, Farmer & Espy, for appellant.—The order of the sheriff to serve the defendant with a copy of the indictment and a copy of the names of the jurors was not sufficient.—*Spicer v. State,* 69 Ala. 159; *Breeden v. State,* 88 Ala. 20; Crim. Code of 1896, § 5273 and notes; *Crawford v. Crawford,* 119 Ala. 34; *Jasper Mer. Co. v. O'Rear,* 112 Ala. 247.

The charges requested by the defendant asserted correct propositions of law and should have been given. *Walls v. State,* 90 Ala. 618; *Underwood v. State,* 72 Ala. 220; *Hamil v. State,* 90 Ala. 577; *Story v. State,* 71 Ala. 329; *Parker v. State,* 88 Ala. 4; *Stillwell v. State,* 107 Ala. 117; *Bostick v. State,* 94 Ala. 45.

Charles G. Brown, Attorney-General, for the State.

TYSON, J.—The order appearing in the record directing the sheriff to serve the defendant with a copy of the indictment and a copy of the list of the names of persons constituting the jurors for trial of the defendant, etc., is sufficient.—Code, § 5273, and authorities cited under it.

The point was raised by charges requested by defend-ant, that there was a fatal variance between the averment of the indictment and the proof as to the name of the deceased. The name of the deceased was averred to be Ad Smith *alias* Age Smith. The proof showed his name was Adger Smith but that he was generally called and known as *Adge* Smith. "The name is matter of description, or identity. * * * We apprehend the true rule to be, that if the names may be sounded alike, without doing violence to the power of the letters found in the variant orthography, then the variance is immaterial."—*Ward v. The State,* 28 Ala. 53. Applying this rule to the names Age and Adge, it is quite clear that they are *idem sonans* and that it may be so affirmed as a matter of law.—*Gresham v. Walker,* 10 Ala. 370; *Rooks v. The State,* 83 Ala. 79; *Edmundson v. The State,* 17 Ala. 179; *Donnelly v. The State,* 78 Ala. 453.

Charge 1 requested by defendant was erroneous, if for no other reason, in that it required the acquittal of the defendant, notwithstanding he may have been guilty of murder in the second degree which was included in the charge preferred in the indictment.

Charges 5 and 9 pretermit all reference to freedom of fault in provoking or bringing on the difficulty, and were misleading.

Charge 6 which is not insisted upon omits to characterize the demonstrations of the deceased as being such as were reasonably calculated to create the honest belief that his life was in danger or that grievous bodily harm was about to be inflicted upon him.

Charge 7 is faulty in not including in it the element of retreat.—*Gilmore v. The State,* 126 Ala. 21.

Charge 8 is confused, and fails to hypothesize that the appearances were such as to impress him (the defendant) with an honest belief that his life was in imminent peril, etc.

The evidence introduced by the State that defendant, in his flight from the scene of the killing, "got behind Jim Suggs and that Jim Suggs had a Winchester rifle and drew the same and stopped the crowd and held them at bay," was entirely competent as part of the *res*

[Mitchell v. The State.]

*gestae* of his flight.   Moreover, we perceive no injury that could have come to defendant from its introduction.   It tended to show that he was fleeing, not from a consciousness of guilt, but to escape the frenzy of the mob who were after him.

There is no error in the record and the judgment must be affirmed.