# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1901.

## Sanders *v.* The State.

*Indictment for Murder.*

1. *Organization of jury; sufficient service of venire upon defendant.*—The service of a list of jurors to try the defendant in a capital case is a sufficient compliance with the order of the court for the service of a copy of the *venire* for such trial, as provided by statute, (Code, § 5273) although the paper served may not be a full copy of the *venire*, in that the list so served is not in the form of a mandate, and is not served by the clerk.

2. *Trial and its incidents; action of jurors upon which order of trial court is not had will not be reviewed.*—The fact that two of the jurors drawn to try a capital case converse with bystanders immediately after the jury was empannelled and sworn, upon which no ruling of the trial court was invoked, constitutes no ground for the reservation of an exception, since it is only the rulings of the trial court that can be reserved for review on appeal to the Supreme Court.

3. *Evidence; when particulars of a difficulty admissible in evidence.*—Where the defendant upon the cross examination of a witness brings out the particulars of a previous difficulty, it is competent for the State upon redirect examination of said witness, to call for further facts relating to the same particulars of such previous difficulty.

4. *Same; evidence as to conversations.*—Where one party draws out a part of a conversation, the other party is entitled to prove the whole of it.

5. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where it is shown that the defendant and the deceased had a difficulty the day previous to the homicide, it is competent for the State to prove that after such quarrel the defendant left the place where it oc-

[Sanders v. The State.]

curred, presumably going home to dinner, and that on his return in the afternoon he brought a pistol with him; such evidence tending to show preparation for the homicide next day, and premeditation in respect of it.

6. *Same; same.*—In such a case it is competent for the State to prove that the defendant's brother who was present during the quarrel between the deceased and the defendant, and who was engaged in the difficulty the following day in which the killing took place, also had a pistol when he returned to his work in the afternoon of the first day.

7. *Same; evidence as to flight.*—On a trial under an indictment for murder, where it is shown that the defendant fled the country immediately after the homicide, it is not competent for the defendant to prove, as tending to show that his flight was not due to consciousness of guilt, that three weeks after the homicide a mob was formed and an attempt was made by it to lynch the defendant's brother who was jointly indicted with him, and two other men charged with aiding the defendant to escape, all of whom were then confined in the county jail.

8. *Trial and its incidents; jury should take indictment into the jury room with them.*—In the trial of a criminal case, it is necessary that the jury should take the indictment with them on their retirement to consider of their verdict; and the fact that the defendant was jointly indicted for murder for the same offense, and that the verdict of the jury which tried his co-defendant was endorsed on said indictment, does not render it improper for such indictment to be taken by the jury in their retirement.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. JOHN MOORE.

The appellant in this case was jointly indicted with his brother, John Green Sanders, for the murder of William Mullen. There was a severance, and each of the defendants was tried separately. The appellant in this case was convicted of murder in the first degree and sentenced to be hung.

Before proceeding to trial the defendant made a motion to quash the venire in the cause upon the following grounds: "First. Because there was not served on the defendant, or on counsel appearing for him, a copy of the indictment and a copy of the venire for his trial one entire day before the day set for the trial as required by law. Second. Be-

cause the paper purporting to be a copy of the venire for defendant's trial does not show in what court the case was set for trial. Third. Because the paper purporting to be a copy of the venire for defendant's trial does not show in what county said venire was drawn. Fourth. Because said paper purporting to be a venire for the trial of defendant is not signed by the clerk of said court nor in any way authenticated as a copy of the venire for his trial. Fifth. Because the paper served on the defendant is not properly or legally authenticated as a copy of the original indictment in this cause."

The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

B. M. ALLEN for appellant.—The paper or list of names served on him was not a copy of the venire and the court erred in overruling appellant's motion to quash and erred in requiring appellant to go to trial against his said objection.—*Ezell and Walker v. State,* 54 Ala. 165; *Nutt v. State,* 63 Ala. 180; Wharton American Criminal Law, § 596; *Tidwell v. State,* 70 Ala. 33; *Sayre v. State,* 30 Ala. 15; *Page v. State,* 61 Ala. 16; *Hubbard v. State,* 72 Ala. 168.

It was error to allow the witness to testify that the defendant had a pistol on the day before the killing, there being nothing to show that it was the pistol used in the perpetration of the alleged homicide and no connection shown between the possession inquired about on the day before the killing and the alleged killing.

The fact of a previous difficulty between the deceased and the defendant may be given in evidence, but not the merits or details thereof.—*Gray v. State,* 63 Ala. 66; *McNally v. State,* 74 Ala. 9; *Commander v. State,* 60 Ala. 1; *Fair v. State,* 58 Ala. 74; *Kilgore v. State,* 114 Ala. 28; *McRae v. State,* 120 Ala. 360; *Whilden v. State,* 71 Am. Dec. 181; *Saylor v. Com.,* 30 S. W. Rep. 390; *State v. Clayton,* 13 S. W. Rep. 819; *Joyce v. Com.,* 78 Va. 287.

Where the State shows the flight of the defendant as evidence tending to show a consciousness of guilt the defendant may rebut the effect of said evidence by show-

ing some other cause or excuse for his flight. He may show that his flight was attributable to other and more innocent motives.—*Sylvester v. State,* 71 Ala. 26; *White v. State,* 111 Ala. 97; *Bowles v. State,* 58 Ala. 335; *State v. McDevitt,* 69 Iowa 549.

On the question of a separation of a jury after it had retired to deliberate, the appellant cites the following authorities: *State v. Williams,* 45 Ala. 57; *Morgan v. State,* 48 Ala. 65; *Williams v. State,* 48 Ala. 85; 1 Bishop's Criminal Proceedings, §§ 993-999; 1 Bishop's Criminal Law (4th ed.), § 855; 1 Bishop's Criminal Proceedings, § 814; Wharton Am. Criminal Law (3rd ed.), 1010; *Overlee v. Com.,* 1 Robinson, 756; *People v. Douglas,* 4 Cowen 26.

CHAS. G. BROWN, Attorney-General, for the State. The caption to the list of jurors and the return of the sheriff thereon show that a copy of the indictment and a list of these regular jurors and special jurors, as ordered by the court, were served on the defendant more than one day before the day set for the trial of the case.—*Overton v. State,* 60 Ala. 75; *Hubbard v. State,* 73 Ala. 168.

It is not pretended that defendant was in any way deceived or misled by the list served on him, and in the absence of any showing that such was the case the venire should not have been quashed. See *Aiken v. State,* 35 Ala. 404-5.

The caption list of jurors and return of sheriff thereon is substantially the same as order of the court in the case of *Ford v. State,* 129 Ala. 16, held to be a sufficient compliance with § 5273 of the Criminal Code of Alabama (1896).

The bill of exceptions shows that the particulars of the difficulty between deceased and defendant and brother of defendant, on the day before were first brought out by defendant's counsel; it was not error to permit the State to introduce in evidence other particulars and circumstances of the difficulty, and the conduct of defendant at the time of the difficulty. *Gordon v. State,* 129 Ala. 113; *Longmire v. State, Ib.* 413.

Besides, the conduct of defendant and his brother, jointly indicted with him, was relevant and material to show motive, and as evidence of a conspiracy between them—of willingness to engage in mortal combat with deceased—of preparation for and determination to arm themselves for the deadly combat and to aid and abet each other therein.

"Evidence of motive whether proceeding from malice, or other cause, is always admissible for the prosecution as making a conspiracy probable."—*Caddell v. State,* 129 Ala. 57; Wright Cr. Con., 214. See pp. 39, 40, 41. 48, 55, 56.

It was clearly shown by the evidence that no improper communication was made to, or improper influence exerted on, the jurors, by their separation under the charge of the bailiff, or in the conversation had with two of them during the trial; and all presumptions to the contrary were conclusively rebutted.—*Nabors v. State,* 120 Ala. 323; *Butler v. State,* 72 Ala. 179; *State v. Veillon,* 29 So. Rep. 883; *State v. Scanlon,* 28 So. Rep. 212.

McCLELLAN, C. J.—It has quite recently been determined that an order that the sheriff "serve the defendant with a copy of a list of the names of the persons constituting the jurors" for the trial of a capital case is sufficient under section 5273 of the Code, which requires the service of a copy of *the venire* for such a trial.—*Ford v. State,* 129 Ala. 16. This ruling necessarily involves the further proposition that a compliance with such order, the service of a *list* of such jurors, is in legal substance and effect sufficient under that section, though the paper served may not be a full copy of *the venire,*—by which is meant the writ issued by the clerk to the sheriff for the summoning of the special jurors and the service upon the defendant of a copy thereof containing also the names of the regular jurors for the week of the trial—in that the list so served is not in the form of a mandate and is not signed by the clerk. That is the case at bar. A perfect list of the jurors for his trial was served on the defendant. It showed on its face that it was such list, it was served, as shown by the return of the sheriff, upon the defend-

ant as such list, and there is no pretense that the defendant was in the least degree misled or prejudiced by the fact that the paper served was not in strictness "a copy of *the venire.*" The whole purpose of the statutory provision is that the defendant shall have seasonable notice of the names of the persons from whom the jury for his trial is to be selected. When this sole end of the law has been attained by placing before the defendant the names of such persons and acquainting him with the fact that the list presents the names of such persons, it is not conceivable that he could be injured by the absence of technical authentication of the list, but to the contrary it is clear that he has not been prejudiced thereby. So that if it were conceded that the statute was not literally complied with in this case, the deviation from its terms worked no injury to the defendant, and if technical error was committed by the court in forcing him to trial upon the service made, he can take nothing by it, the doctrine of error without injury having been extended by statute to criminal cases. Code, § 4333.

No ruling of the court was invoked or had in respect of the action of two jurors in conversing with bystanders immediately after the jury was empanneled and sworn (except perhaps on the motion for a new trial). The exception reserved was to this action of said jurors and not to any decision of the court in reference to it. It is only rulings of the trial court that can be reserved for review in this court.

Motions for new trials in criminal cases are addressed to the sound discretion of the trial judge and his rulings upon them are not revisable by this court. Hence, if it be supposed that the matter last above referred to was presented on the motion for a new trial and ruled upon in the denial of that motion, the appellant can take nothing here on account of such ruling. So too as to the separation of the jury after the case had been finally submitted to them, three of them leaving the others in a jury room and going off in charge of a bailiff to attend a call of nature: This matter was fully presented on the motion for a new trial, and not otherwise; and we cannot review the court's action upon

it. We deem it not out of place to remark, however, that on the facts shown in respect of both these alleged separations of the jury, the court was entirely justified in its action in relation thereto.—*Butler v. State,* 72 Ala. 179; *Nabors v. State,* 120 Ala. 323.

The State having proved by the witness Curtis Lockett that the defendant and Mullen, the deceased had a quarrel the day before the homicide, the defense on cross-examination of this witness drew from him the following testimony in relation to that quarrel or difficulty: "I heard very little of the difficulty between Mullen and Luke [the defendant] the day before. I heard Mullen [who was road overseer, defendant working under him] curse the defendant and say to the defendant, 'God damn your soul, I want you to stop your foolishness and go to work, and if you aint going to work put down your tools and go home.'" On re-direct or rebuttal examination of the witness, the State was allowed against defendant's objection to ask this question: "What was Luke doing when Mullen cursed him and told him to go to work?" To which the witness replied: "He was raking dirt." The State then asked: "Was he raking dirt or was he standing up?" This question was allowed against defendant's objection, and the witness answered: "Luke was standing up raking dirt." If there was error in the allowance of these questions by the State, it involved no injury to the defendant since the answers to them were favorable to him, going, as they did, to show that the defendant was working at the time Mullen was cursing him for not working, and of consequence that Mullen's abuse of him was gratuitous and without palliation. But no error was committed by the court in this connection. If the questions objected to called for particulars of a previous difficulty, they were yet proper because they related to the same particulars as to which the defense had on cross-examination had the witness to testify. Upon the same principle, as also upon the further proposition that when one party draws out a part of a conversation the other party is entitled to prove the whole of it, the State was properly allowed to show by this witness the reply made by the defendant to the remark

addressed to him by Mullen, viz., "I aint going home, I am going to work."

Under all the circumstances of this case, it was palpably competent for the State to prove that after this quarrel the defendant left the place where the quarrel occurred, presumably going home to dinner, and that on his return in the afternoon he had a pistol, the evidence tending to show that he did not have the weapon before or at the time of the quarrel; such testimony having a legitimate tendency to show preparation for the homicide of the next day, and premeditation in respect of it. So the court did not err in permitting the State to ask this and other witnesses whether the defendant had a pistol on his return to the work in the afternoon of the day of the quarrel. And it was competent for the State to prove that defendant's brother, John Sanders, who was present during the quarrel between Mullen and Luke, and who was engaged in the difficulty the following day in which Mullen was killed, had a pistol when he returned to the work in the afternoon of the first day. This also went to show community of design on the part of the brothers, and joint preparation, and premeditation.

The witness Charley McLaughlin having on cross-examination by the State testified that the defendant, on the occasion of the quarrel between him and Mullen the day before the homicide, said that "he would die and go to hell before he would take any more of Mullen's foolishness," the State against defendant's objection was allowed to ask him this question: "Didn't John Green [Sanders] say at the same time the same thing?" Witness replied: "He did not." The State then asked this question: "Did you not so testify before C. C. Johnston acting as coroner in this case?" And to this the witness answered: "I did not so testify before said C. C. Johnston, coroner." It is clear that the defendant was not prejudiced by this evidence. The effort of the State was to prove that defendant's brother John Green also used the threatening language which the witness had deposed to defendant's having used. The witness swore to the contrary; and when he was asked whether he had not testified differently on another oc-

casion, he swore that he had not. All that he said in this connection was favorable to the defendant, and the court committed no error of which he can complain by allowing the testimony to go to the jury. In the brief of appellant's counsel this witness is confused with the witness Charlie Sanders, and the further mistake is made of ascribing to Sanders the statement that he did so testify before the coroner. Charlie Sanders did not refer to this matter at all in his testimony, and Charley McLaughlin, the only witness who spoke of it, swore, as we have seen, that he did *not* testify before Johnston, the coroner, that John Green said he would die and go to hell before he would take any more of Mullen's foolishness.

The defendant fled the country immediately after the homicide. It was sought to be proved in his behalf as tending to show that his flight was not due to consciousness of guilt, that three weeks later a mob was formed and an attempt was made by it to lynch John Green Sanders jointly indicted with him and two other men charged with aiding defendant to escape, all of whom were then confined in the county jail. The court properly excluded this evidence. It is not conceivable that the formation and actions of this mob three weeks after defendant's flight could have been the cause of that flight, or that evidence in that regard could have legitimately tended to show that defendant's flight was not due to consciousness of guilt.

It was necessary that the indictment should be taken by the jury on their retirement to consider of their verdict. The fact that John Green Sanders was also charged in the same indictment jointly with this defendant and that the verdict of the jury which tried him severally the week before, finding him guilty of murder in the first degree, was written on the indictment neither emasculated the indictment as to Luke Sanders, this defendant, nor avoided the legal necessity for the paper being with the jury in his case when they retired to make up their verdict.

The rulings of the court on requests for instructions are not discussed in the brief for appellant. We will, therefore, content ourselves with saying here that they have been duly considered and found to be free from

[Davis v. The State.]

error.

The judgment of the circuit court must be affirmed. The day for the execution of the sentence of death imposed upon the defendant in the court below having passed, it will be here ordered and adjudged that said sentence be executed on Friday the 7th day of February, 1902.