81 So.2d 616

**Ellon MEEKS**

v.

**STATE.**

4 Div. 269.

Court of Appeals of Alabama.
March 15, 1955.

Rehearing Denied April 5, 1955.

J. C. Fleming and Robt. Cannon, Elba, and John C. Walters, Troy, for appellant.

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

The accused was tried in the court below under an indictment charging him with first degree murder and adjudged guilty of murder in the second degree. The sentence imposed was fifteen years.

Without dispute in the evidence the appellant killed one Homer McCord by shooting him in the head with a shotgun.

The defendant testified that on the day of the homicide as he was driving his tractor he saw the deceased, who at the time was approaching him with an ax in his hand. Under these circumstances he suddenly fired the fatal shot. It appears that there was a fence between the two parties at the time of the homicide.

The evidence for the State, including photographs of the scene, clearly posed a jury question as to whether or not the appellant acted in self defense as he claimed.

There was no request for the general affirmative charge in appellant's behalf.

We would be out of line with the familiar authorities if we should hold that the presiding judge was in error in overruling the motion for a new trial on the stated grounds that the verdict was contrary to the great weight of the evidence.

In brief appellant's counsel anchors his insistence for error on one question only.

In order that this matter may be fairly and accurately presented we copy at length from the record:

"12:25 a. m., April 7, 1954, the Defendant being present, the Jury was brought from the Jury room, and the following took place:

"The Court: Gentlemen of the Jury, we certainly don't want to be in any position of hurrying you. We just thought we would call you out and see if there was any way we could help you—find out how you are getting along—I don't mean by that how you are standing. We don't want to know that. But I wanted to see if you think there is a probability that you might reach a verdict tonight, or whether you would like for us to try to find some place to put you up for the night and let you rest some. Some of you men are not as young as others on there. So if you think it would help any to continue your deliberations, or whether you would rather we would try to find a place to let you go to bed and rest and get up tomorrow. You have had a hard day and we want to cooperate with you as much as we can. What is your thinking, Mr. Davis? You are one of the younger boys on there.

"The Juror: Looks like we won't get together.

"The Court: Is that the general feeling among you? Do you feel that perhaps you would accomplish more for us to try to get some place for you to go to bed? Under the law we will have to keep you together. We could not separate you under the law. We would be prohibited from doing that. Do you feel that you could maybe accomplish more in the morning if we let you go to bed and get up in the morning and start over for awhile? How do you gentlemen feel about that?

"A Juror: It looks like we could get together if they would come across. (laughter)

"The Court: Yes, sir; of course every man has a right to his own opinion.

"The Juror: It is about eight to four.

"The Court: Well, would you like for us to send you up some coca-colas, and let you stay in there for a little while longer?

"The Juror: It would suit me all right.

"The Court: It is getting pretty hot in there. I can see some of your shirts are getting wet. I tell you what to do, gentlemen: Go back in there and discuss it, and come back and let me know whether you want to stay on in there for a while until you let us know, or let us know whether you would like to go to bed.

"Let me say this, gentlemen: There is no place, as most of you know, available here,—no hotels to keep you gentlemen; but the Sheriff tells us that the Jail— (interrupted)

"A Juror: O, no! (laughter)

"The Court: In all seriousness, gentlemen, the White side of the Jail down there is empty, and they have it clean, and they have new beds, new covers and everything and it is quite comfortable; and he tells us we can use that if you want to lie down and rest some. So go back in there and talk about it among yourselves and knock on the door and let us know what you would like to do.

"A Juror: Will they leave the door open?

"The Court: Yes sir, they won't lock you up in there.

"A Juror: What about—(The Reporter didn't catch question)

"The Court: No sir, it is very nice down there. They have new beds, never have been used, new covering and everything, and nobody in there, and it is cleaned up, so you won't have to worry about it.

"(The Jury again retired to the Jury room)

"1:20 a. m., April 7, 1954: The Jury made known it was ready to report. Thereupon, the Defendant being present, the Jury was brought into the Court room, and the following took place:

"The Court: All right, gentlemen, have you reached a verdict?

"The Foreman: We have, Your Honor. (hands verdict to Court)

"The Court: All right. (Reads verdict: We the Jury find the defendant guilty of murder in the second degree. We the Jury fix the sentence at fifteen years' imprisonment.)

"The Court: Now, gentlemen, that is not quite the right form—Mr. Fleming, and Mr. Cannon?

"Mr. Fleming: We agree that the Court put it in proper form.

"The Court: All right, sir. Now do you gentlemen wish to poll the Jury?

"Mr. Fleming: No sir, I don't.

"The Court: This is the verdict of all you gentlemen, is it? Is this your verdict?

"(The Court proceeded to poll the Jury, asking each juror if it were his verdict. Each Juror answered in the affirmative.)

"The Court: All right, gentlemen, you may now go, and be back tomorrow morning at nine o'clock."

It is to be noted that counsel did not except to the court's instructions or suggestions to the jury. Nor did he make a motion for a mistrial. The question is not raised in the motion for a new trial. We have a situation where no ruling of the court was invoked at nisi prius and we are urged to review the matter in this state of the record.

There is a long line of decisions which hold that our review is appellate in nature and we are limited to questions which are properly raised in the court below. Eatman v. State, 30 Ala.App. 312, 5 So.2d 119; Fountain v. State, 30 Ala.App. 304, 4 So.2d 659.

This rule has been consistently applied to the oral charge to the jury. That is to say an exception must be reserved to the portion of the oral charge which forms the basis for insistence for error. Mobile Light & R. Co. v. Ellis, 209 Ala. 580, 96 So. 773; Reeder v. State, 210 Ala. 114, 97 So. 73; McPherson v. State, 198 Ala. 5, 73 So. 387. See also Meadows v. State, 182 Ala. 51, 62 So. 737; Sanders v. State, 131 Ala. 1, 31 So. 564; Williams v. State, 27 Ala.App. 293, 171 So. 386.

It is our view that the matter of instant concern comes under the influence of these authorities.

We are frank to state that we cannot agree with appellant's counsel that the effect of the court's instructions or suggestions to the jury was to threaten it with imprisonment in the county jail if a verdict was not reached promptly. An examination of the copied excerpt from the record will certainly sustain our view. Clearly the substantial rights of the accused were not in any manner jeopardized by this occurrence.

We have given careful and studious consideration to the entire record, and we do not find any prejudicial error appearing.

The judgment below is ordered affirmed.

Affirmed.