123 So.2d 20

**Otto SCHOEN, as Executor,**

**v.**

**Erna SCHOEN.**

**1 Div. 786.**

Supreme Court of Alabama.

Sept. 8, 1960.

Arthur C. Epperson, Foley, for appellee.

Jas. R. Owen, Bay Minette, for appellant.

LIVINGSTON, Chief Justice.

A claim for $11,900 was originally filed in the probate court by the appellee, Erna Schoen, against the appellant, Otto Schoen, as executor of the estate of Emma Schoen, deceased, for necessities furnished to the deceased Emma Schoen for a period of six and one-half years prior to her death by the appellee, Erna Schoen, on an implied contract based on the mental and physical infirmities of the said Emma Schoen, during the period covered by the claim.

The judge of probate upon hearing found that "the said Emma Schoen, deceased, was mentally and physically disabled to the extent that she could not exercise any control over her mental and physical functions for a period of six and one-half years immediately prior to her decease; that the said deceased was a bed patient for the stated peri-

od of time and required almost constant attention the same as if a two month old child," and awarded the appellee the sum of $5,000.

The appellant appealed to the circuit court and demanded a trial by jury.

The appellee amended the claim as filed in the probate court by adding Count 2, in essence, a count claiming $11,900 for necessities furnished on an implied contract. Later, she amended the complaint by striking Count 1.

The appellant joined issue by filing pleas of the general issue.

After the appellee rested, the appellant rested and requested the general charge, orally and in writing, both of which were refused.

The jury found in favor of the plaintiff (appellee) for the sum of $8,000, and the court entered judgment for this amount.

Appellant filed a motion for a new trial, which was denied.

Mrs. Erna Schoen testified that she was a resident of Baldwin County, Alabama; that she filed a claim in the Probate Court of Baldwin County, Alabama, against the estate of Emma Schoen, deceased. (It was admitted during the testimony of Erna Schoen by the attorneys for the appellant that Otto Schoen was the personal representative of Emma Schoen, deceased.)

Mrs. Erna Schoen also testified that she had to feed Emma Schoen, wash her, and wash her clothes, and had done this previous to and since June of 1949 until the death of Mrs. Emma Schoen (which occurred May 9, 1956); that she cooked and cared for Emma Schoen from June of 1949 with the expectations of being paid, and that she thought her services were worth $150 per month; that Mrs. Emma Schoen was helpless, she was worse than an infant, "she soiled all over herself and could not take care of herself at all"; that her mind was not there any more; her mind

was gone and that Mrs. Emma Schoen was in this condition in June of 1949.

Mrs. Elizabeth Franhoffer testified that Mrs. Erna Schoen performed personal services such as nursing, cooking, bathing and things of that nature for Mrs. Emma Schoen from June 1949 until her death; that "since 1949, about June, she (Emma Schoen) couldn't do nothing, she was in bed all of the time."

Mr. Joe Schoen testified that he was the son of Emma Schoen, deceased, and husband of Erna Schoen, the appellee; that he and his wife, Erna Schoen, lived in a separate house from the house occupied by Emma Schoen during the last part of the lifetime of Emma Schoen and that he and his wife, Erna Schoen, resided in his house and that Emma Schoen resided in her house; that Erna Schoen took care of Emma Schoen because she was as feeble as a baby, she had to bathe her like a baby and put her in the tub and carry her body around; that it was harder than a baby—she had to feed her with a spoon. He also testified that his mother's mind was feeble and that his wife had to care for her from 1948 or 1949 "because she just about set the house on fire several times and my wife went in and she would have burnt up if my wife hadn't gone in there"; that Erna Schoen took care of Emma Schoen until her death from 1948 or 1949.

Mrs. Rudolph Bowman testified that she was acquainted with Mrs. Emma Schoen since 1926; that she knew the condition of Mrs. Emma Schoen prior to her death, and that such condition existed about six years or more before her death; that Mrs. Emma Schoen didn't know us and she couldn't help herself; she had to be washed and cleaned, dressed and fed; and that she couldn't move of her own; that prior to the death of Mrs. Emma Schoen for a period of six years, Erna Schoen cared for her, and that Erna Schoen got some other women in to help her once in awhile.

In the case of Duncan v. Johnson, 239 Ala. 183, 194 So. 528, 529, a case in which

a daughter claimed reimbursement out of the estate of her deceased mother for services and supplies necessarily rendered in caring for her, it was said:

"The general principle is now well settled in this State that when a child furnishes articles and services, including board and attention, to a parent, the prima facie presumption is that they were gratuitous; but this presumption may be overcome by a contract expressed or implied to pay for them. Lowery v. Pritchett, 204 Ala. 328, 85 So. 531; Nelson v. Nelson, 210 Ala. 592, 98 So. 885.

"Such an agreement is implied between near relatives when the circumstances are such that a mutual intent to pay and receive compensation for such services and supplies is a reasonable and just conclusion. Coleman v. Adkins, 232 Ala. 351, 168 So. 184."

It was further said in that case:

"But when a parent becomes insane so as to need the special care and attention here shown, and one of the children has the entire burden of supplying it, the courts have held that those circumstances are sufficient to support such an implied agreement upon the idea that they were furnished with a reasonable expectation of reimbursement. 28 R.C.L. 689, note 14; Reando v. Mosplay, 90 Mo. 251, 2 S.W. 405, 59 Am.Rep. 13; Humble v. Humble, 152 Ky. 160, 153 S.W. 249; Durr v. Durr, Ky., 82 S.W. 581; Hartley v. Hartley's Estate, 173 Mo.App. 18, 155 S.W. 1099."

█ Certainly a daughter-in-law does not stand in a more unfavorable position in this regard than does a daughter who receives compensation for services to her own mother.

Assignment of error 1 reads as follows:

"1. The court erred in allowing the appellee, Erna Shoen, to testify over appellant's objection as follows:

"Q. Do you know of your personal knowledge whether or not Mrs. Schoen had an estate from which the services could have been paid? A. Yes sir.

"Mr. Blackburn: I object as irrelevant, incompetent and immaterial.

"Mr. Epperson: I think it is necessary—

"The Court: He is asking if she know of her own personal knowledge.

"Mr. Blackburn: That doesn't matter; it is irrelevant.

"Mr. Owen: It doesn't matter whether the estate has enough money to pay her claim or not.

"Mr. Epperson: I want to show that the estate is solvent.

"The Court: Do you admit that the estate is solvent?

"Mr. Blackburn: Proving it is something else. We object on the ground that it is irrelevant, incompetent and immaterial.

"The Court: Overrule the objection, if she knows from her personal knowledge.

"Mr. Blackburn: We except.

"A. She had enough land to pay for her services."

From a reading of this assignment of error and the argument made by appellant in support of it, it is uncertain as to whether or not appellant is contending the court erred in overruling the objection to the question, "Do you know of your personal knowledge whether or not Mrs. Schoen had an estate from which the services could have been paid?" or the admission of the answer by the witness that "She had enough land to pay for her services."

■ We will discuss this assignment as it applies to both the question and answer. The question as asked called for a "yes" or "no" answer, and it is clear that the answer given was not responsive to the question. However, the record indicates that no objection was made by appellant to the answer, nor did appellant move the court to exclude the answer, and, as a consequence, the court made no ruling as to the answer. Assignments not referring to any ruling of the court presents nothing for review. McLaney v. Turner, 267 Ala. 588, 104 So.2d 315. It is, therefore, clear that the trial court did not err in admission of this statement. ·

■ The assignment is also without merit if it was directed to the overruling of the objection to the question, this, for the reason that the objection was not timely made, as shown by the above-quoted record. Moreover, if the court had erred, such error would be rendered harmless by the later admission of other evidence to the same effect without objection. Harvey Ragland Co. v. Newton, 268 Ala. 192, 105 So.2d 110, and cases there cited; Blount County v. McPherson, 268 Ala. 133, 105 So.2d 117; Stewart v. Weaver, 264 Ala. 286, 87 So.2d 548.

■■ Assignments of error 2, 3, 4 and 5 are predicated on the trial court's refusal to give four written charges requested by appellant. Each of these refused charges are general affirmative charges with or without hypothesis. The argument made in support of these assignments is that the evidence is not sufficient to prove a contract between the deceased and appellee. These assignments of error are without merit because the scintilla evidence rule is in effect in Alabama and the general affirmative charge should not be given against plaintiff where there is the slightest evidence tending to prove a right of recovery. Birmingham Elec. Co. v. Freeman, 32 Ala.App. 479, 27 So.2d 231; Alabama Great Southern R. Co. v. Bishop, 265 Ala. 118, 89 So.2d 738, 64 A.L.R.2d 1190; Chesser v. Williams, 268 Ala. 57, 104 So.2d 918.

■ The sixth assignment of error is that the trial court erred in overruling appellant's motion for a new trial. Appellant argues only those grounds for said motion which are the same as assignments of error 2, 3, 4 and 5.. Therefore, this assignment is also without merit for the same reason that assignments of error 2, 3, 4 and 5 are not meritorious. Moreover, where there is evidence which, if believed, justifies the verdict, the overruling of the motion for a new trial strengthens the presumption in favor of the correctness of the verdict. Smith v. Smith, 254 Ala. 404, 48 So.2d 546; Jacks v. City of Birmingham, 268 Ala. 138, 105 So.2d 121.

The judgment of the trial court is due to be, and is, affirmed.

Affirmed.

SIMPSON, GOODWYN and COLEMAN, JJ., concur.