229 So.2d 783

**ASTRONAUTICAL DEVELOPMENT COMPANY, Inc.**

v.

**UNIVERSITY OF ALABAMA, HUNTSVILLE FOUNDATION INC.**

**8 Div. 249.**

Supreme Court of Alabama.

Dec. 11, 1969.

Culver & Miller, Huntsville, for appellant.

Bell, Richardson, Cleary, McLain & Tucker, Huntsville, for appellee.

PER CURIAM.

This is an appeal from a final decree of the Circuit Court of Madison County, in Equity.

On August 23, 1963, Research Sites Foundation, a corporation, hereinafter referred to as Research Sites, delivered to Tec Productions, Inc., a corporation, hereinafter referred to as Tec, a deed conveying approximately five acres of land situated in a research and industrial park in

Huntsville, Madison County, Alabama, known as Research Park.

The deed from Research Sites to Tec contained the following provisions:

"It is expressly agreed by and between the parties hereto that the hereinabove described tract of land is being sold and conveyed to the grantee for the construction thereon of a research or development or manufacturing or testing facility and that as a part of the consideration for the conveyance of said property to it, is the agreement on the part of the grantee to begin construction thereon of a research or development or manufacturing or testing or related facility within one year from the date of this conveyance of title and the grantee covenants and agrees that upon its failure to build thereon for such purpose or purposes within such period of time, the grantor shall have for a period of 90 days immediately following the expiration of said one year period the option to repurchase the above described tract of land for a sum equal to the total purchase price paid by the grantee plus interest at the rate of six percent (6%) per annum, for the period the grantor has retained the purchase price paid by the grantee plus the cost paid by the grantee of any public improvement assessments upon said property, and all costs paid by the grantee in connection with the construction of the sewer herein referred to."

Although the deed does not so recite, Research Sites received the sum of $15,000 for the said five acres of land, to which we will sometimes hereinafter refer as the suit property.

On October 11, 1963, Tec conveyed a one-half undivided interest in the suit property to Frederick I. Ordway, III. On December 2, 1963, Frederick I. Ordway, III, and wife and Tec conveyed the suit property to Astronautical Development Company.

Based on its contention that the construction of a research or development or manu- facturing or testing or related facility had not been begun on the suit property within one year from August 23, 1963, Research Sites on November 20, 1964, served upon Frederick I. Ordway, III, in his individual capacity and as president of Astronautical Development Company, a written instrument which in pertinent part reads as follows:

"Notice is hereby given that Research Sites Foundation, Inc., elects to exercise its option to re-purchase the real property conveyed by it to Tec Productions, Inc., by deed recorded in the Probate Office of Madison County, Alabama, in Deed Book 329, page 177, as provided in said deed.

"Research Sites Foundation, Inc., hereby demands re-conveyance of said real property forthwith and is ready, willing and able to pay to whomever shall be entitled thereto, upon tender of the deed of reconveyance, the price provided for such re-purchase by the aforesaid deed to Tec Productions, Inc."

The same notice was given to Tec on November 21, 1964, by the service upon its vice president of the notice last quoted above.

The parties upon whom the above quoted notice was served not having tendered a deed reconveying the suit property to Research Sites, the latter, on November 25, 1964, filed its bill of complaint in the Circuit Court of Madison County, in Equity, against Tec, Astronautical Development Company, Inc., and Frederick I. Ordway, III, praying that the court:

" * * * order and direct the specific performance of said agreement by said respondents as therein provided, and further the court order and direct the execution of a deed by said respondents, conveying the said real estate hereinabove described [the suit property], to the complainant, upon payment by the complainant of the purchase price plus interest and such other charges as are provided by said agreement which sum it herewith

pays into court on deposit with the Register of this Honorable Court; and complainant offers to do equity in the premises."

Astronautical Development Company, Inc., and Frederick I. Ordway, III, interposed a demurrer to the bill of complaint on December 8, 1964, which was overruled on December 22, 1964.

We will sometimes hereinafter refer to Astronautical Development Company, Inc., and Frederick I. Ordway, III, as the respondents, since Tec made no appearance.

On January 6, 1965, the respondents filed an answer which contained averments to the effect that the actual construction of a research, development, manufacturing, testing or related facility was begun on the suit property on or prior to August 23, 1964. The respondents' answer contained six paragraphs.

On January 19, 1965, the complainant interposed a demurrer to Paragraphs 5 and 6 of the respondents' answer. On the same day the complainant filed a written motion to strike from Paragraph 6 of the answer the following averments:

"These respondents further state that the complainant has placed a cloud upon the title of the respondents' property which is described in paragraph 2 of the bill of complaint [suit property] by filing a notice of lis pendens in the office of the Judge of Probate of Madison County, Alabama, and that such notice has in fact placed a cloud upon the respondents' property which has greatly restricted the respondents from diligently proceeding and completing the building which they have begun and which they have been ready at all times to fully complete and occupy."

The trial court on March 31, 1965, rendered a decree sustaining complainant's demurrer to Paragraph 5 of the respondents' answer and overruling the demurrer as directed to Paragraph 6 of the answer. In the same decree the trial court sustained complainant's motion to strike from Paragraph 6 the language last above quoted.

The cause came on for a hearing before Judge David R. Archer on June 10, 1965. At the outset of the trial an attorney for the complainant made the following oral statement to the court: "Comes the Complainant and amends the complaint to reflect a change of the corporate name of the Complainant from Research Sites Foundation, Inc., to University of Alabama, Huntsville Foundation, Inc." In response to that statement an attorney for the respondents orally moved the court: " * * * to dismiss the bill of complaint filed by the Complainant in its entirety, in that the change of name in this particular instance from one corporation to-wit: Research Sites, Inc., to University of Alabama, Huntsville Foundation Inc., presents a completely new complainant to this action, and one of which [sic] that is not a proper party in this instance." The trial court overruled that motion.

On the same day, June 10, 1965, the complainant filed its "Amended Complaint," which reads:

"COMES NOW the complainant in the above styled cause and moves to amend its complaint by adding the following:

" '7. Complainant avers that at the time of its conveyance to the respondent, Tec Productions, Inc., that it was represented to the complainant by the respondent, Tec Productions, Inc., its agents, servants and employees, that the respondent, Tec Productions, Inc., would construct a research and development or manufacturing or testing or related facility on the above described land. Complainant further avers that at the time of the aforesaid conveyance to Tec Productions, Inc., that said representation by Tec Productions, Inc., was made with intention to deceive the complainant and was made with no intention of fulfillment at the time when said false representation was made. Complainant further avers that the conveyance of the

property above described by the complainant was made in reliance upon the representations of the respondent, Tec Productions, Inc., and that these representations were part of the consideration for said conveyance by the complainant.'

"Complainant further amends its complaint by adding to its prayer for relief the following:

" 'Complainant further prays that upon the hearing hereof, the court will order and decree that the deed from the complainant to the respondent, Tec Productions, Inc., is cancelled and rescinded.' "

After the filing of the "Amended Complaint" counsel for the respondents orally moved that it be stricken on the ground that its late filing placed the respondents at a great disadvantage in that the said "Amended Complaint" constituted "a completely new cause of action and one of which considerable research would be required to adequately demur and to plead to * * *." The trial court overruled the oral motion, but such action was apparently based on the following statement made by the trial court: "Now, let the record show that it is agreed and stipulated by the complainant and respondents that testimony be taken in this cause on all matters, except the amended complaint, the amendment to the complaint, which is Paragraph Number 7, and the prayer which is included in that amended complaint."

Thereafter, on June 10, 1965, the respondents filed an "Amended Answer" which in pertinent part reads:

"1. That Paragraph 5 of the answer heretofore filed is hereby deleted in its entirety and in place thereof the following is added by way of amendment.

"5. That these Respondents deny that the Complainant has been at any time entitled to the right to repurchase the aforesaid real estate as described in the bill of complaint [suit property], and that the right to repurchase has never at any time accrued to and been available to

the Complainant, and that these Respondents did receive a written notice signifying an intention by Complainant to repurchase, but have never at any time been offered a specific sum of money or been tendered a specific sum of money. That these Respondents have never at any time failed or refused to perform any of the agreements which they agreed to under the terms and conditions of the conveyance, marked Exhibit 'A' [deed from Research Sites to Tec Productions, Inc.], but to the contrary have at all times fulfilled any and all agreements which they agreed to perform."

Paragraph 5 of respondents' original answer, which was deleted by the "Amended Answer," reads:

"That the averments of Paragraph 5 of the bill of complaint contain mere legal conclusions of the pleader and, therefore, these Respondents decline to answer the same at this time, but move to strike the same from the bill of complaint upon the grounds that the same are mere legal conclusions on the part of the pleader."

Several witnesses were examined on June 10, 1965. The hearing was recessed or adjourned until September 23, 1965.

On September 22, 1965, the respondents interposed a demurrer to Paragraph 7 of the amended complaint, the paragraph added by the amendment filed on June 10, 1965, and the respondents on the same day, September 22, 1965, filed a motion to strike said Paragraph 7 of the amended complaint. We can find no ruling of the trial court on the pleadings filed by the respondents on September 22, 1965.

On September 23, 1965, the respondents filed an "Amended Demurrer" directed to the averments of Paragraph 7 of the amended bill of complaint. We can find no ruling by the trial court on that "Amended Demurrer." Also on September 23, 1965, the respondents filed an "Answer to Amended Bill" wherein they denied the aver-

ments of Paragraph 7 of the "Amended Bill of Complaint" and averred that they commenced construction on the suit property of "a research, development, management, testing or related facility" within one year from August 23, 1963, and further averred that "the entire amount of consideration which was asked for by the Complainant was paid in full on the date of the conveyance, and that all the terms and conditions as set forth in the deed of conveyance from the Complainant have been fulfilled and were being complied with on date of the filing of this cause of action."

As before indicated, the trial of this case had been recessed or adjourned until September 23, 1965. The taking of testimony was concluded on that date.

A final decree was rendered and entered on September 20, 1966, the first sentence of which reads:

"This cause coming on to be heard orally before the Judge in Open Court on the 10th day of June, 1965, and adjourned to the 23rd day of September, 1965, is submitted for final decree upon the pleading and proof as noted by the Register."

In the final decree of September 20, 1966, the trial court denied complainant any relief as against Tec and Frederick I. Ordway, III, on the ground that their interest in the suit property had been conveyed to the respondent Astronautical Development Company, Inc., before this suit was filed.

But as to the respondent Astronautical Development Company the trial court, in the decree of September 20, 1966, found that the complainant was entitled "to the relief of specific performance" and decreed that said respondent "deliver a deed of conveyance in statutory form to the Register of this Court within (20) days from the date of this decree, conveying to complainant, University of Alabama, Huntsville Foundation, Inc., a corporation, fee simple, indefeasible title in and to said land [suit property]"; and further decreed "that the said respondent Astronautical Development Company, Inc., is entitled to the sum of Fifteen Thousand Nine Hundred Two Dollars and 50/100 ($15,902.50) as provided in the repurchase option attached as Exhibit A to the Bill of Complaint, which said sum includes interest at Six (6) per cent per annum through August 11, 1964, when said sum was paid into Court by the Complainant, and the Register is directed and ordered to pay over to the respondent Astronautical Development Company, Inc., the said sum of Fifteen Thousand Nine Hundred Two Dollars and 50/100 ($15,902.50) upon delivery of said deed of conveyance as hereinbefore ordered, and deliver said deed to the complainant."

On September 29, 1966, the complainant filed its "Motion for Amendment of Decree," wherein the trial court was requested to amend its decree of September 20, 1966, nunc pro tunc, so as to show that the cause was submitted for final decree upon the "Bill of Complaint as amended; the answer of the respondents, Astronautical Development Company, Inc., and Frederick I. Ordway, III, as amended; the stipulation of the parties; and the testimony taken orally and exhibits introduced in open court," rather than on "pleading and proof as noted by the Register."

The respondent Astronautical Development Company, Inc., on October 4, 1966, filed a motion to strike the complainant's "Motion for Amendment of Decree" and on the same day filed a demurrer to said motion. No specific ruling of the trial court on the said motion to strike or on the said demurrer appears in this record.

· But on October 7, 1966, the trial court rendered a decree which in pertinent part reads as follows:

"Therefore it is considered, ordered, adjudged and decreed by the Court that the final decree rendered in this cause on September 20, 1966, be amended to cause the first sentence of said decree to read as follows:

"This cause coming on to be heard orally before the Judge in Open Court on

the 10th day of June, 1965, and adjourned to the 23rd day of September, 1965, is submitted for final decree upon the Bill of Complaint as amended; the answer of the Respondents, Astronautical Development Company, Inc., and Frederick I. Ordway, III, as amended; the stipulation of the parties; and the testimony given orally and exhibits introduced in open court."

On October 10, 1966, the respondent Astronautical Development Company, Inc., appealed this court from the final decree of September 20, 1966, as amended on October 7, 1966. The said respondent also executed a supersedeas bond on October 10, 1966.

■ Appellant has made thirty-seven assignments of error. Many of them are not argued in brief filed here on behalf of appellant and, hence, will not be considered on this appeal. Neumiller v. Jenkins, 270 Ala. 231, 117 So.2d 402; Smith v. Smith, 279 Ala. 570, 188 So.2d 530; Thornton v. Tutt, 283 Ala. 72, 214 So.2d 425; Rule 9, Revised Rules of the Supreme Court of Alabama, 279 Ala. XXVI.

We will consider first appellant's Assignments of Error 27, 28, 36 and 37.

■■ Assignments of Error 27 and 28 are to the effect that the trial court erred to a reversal in rendering the decree of September 20, 1966, in that said decree was predicated "upon the pleading and proof as noted by the Register," when there was no note of submission filed in the cause. The language just quoted was incorrectly included in the decree of September 20, 1966, since there was no note of submission, but the inclusion of that language in the decree cannot work a reversal because, as we have heretofore shown, the decree of September 20, 1966, was amended on October 7, 1966, so as to show that submission for final decree was "upon the Bill of Complaint, as amended; the answer of the Respondents Astronautical Development Co., Inc., and Frederick I. Ordway, III, as amended; the stipulation of the parties; and the testi-

mony given orally and exhibits introduced in open Court." Since this judgment was made within thirty days of the original decree, we are not concerned with the rule that the trial court, after the adjournment of the term or the expiration of thirty days, cannot alter or amend a judgment or decree except for a clerical error or omission on evidence shown by the record. The court retained control of its original decree, even though final, for thirty days, there being no adjournment of the term, during which time it could add to or strike from the decree any matter which could properly be added or stricken. § 119, Title 13, Code 1940; Taunton v. Trammell, 254 Ala. 252, 48 So.2d 190; Ex parte Green, 221 Ala. 298, 129 So. 72. See Alabama Hide & Tallow Co. v. Pincheon, 282 Ala. 404, 211 So. 2d 896.

■■ Assignments of Error 36 and 37 are argued in appellant's brief as if they correctly assert that the decree of September 20, 1966, as amended by the decree of October 7, 1966, should be reversed because it affirmatively appears from the amended decree that submission was had on evidence not taken in open court and not noted in a note of submission. As shown above, the decree as amended shows that submission, in part, was on "exhibits introduced in open Court." Appellees, the complainant below, introduced in evidence as its Exhibit 26 a deposition of the respondent Fred Ordway, III, taken under the provisions of Act 375, approved September 8, 1955, Acts of Alabama 1955, Vol. II, p. 901, which provisions were made applicable to equity cases by Act 138, approved May 9, 1963, Acts of Alabama 1963, Vol. I, p. 323. See §§ 474 (1)–474(18), Title 7, 1958 Recompiled Code of Alabama, and § 474(19), Title 7, 1967 Cum. Pocket Part, 1958 Recompiled Code, *supra*. Since there was no note of submission, appellee's Exhibit 26 will not be considered in connection with appellant's insistence that the decree of the trial court is "contrary to the weight of the evidence presented in this case." Maddox v. Maddox, 281 Ala. 209, 201 So.2d 47. But the

fact that the trial court may have considered complainant's Exhibit 26 in rendering its decree does not require a reversal. Such is the effect of our opinion in Maddox v. Maddox, *supra*.

█ It is argued by appellant that the trial court erred to a reversal in sustaining the demurrer of Research Sites to Paragraph 5 of the respondents' answer. The trial court should not have sustained the demurrer, for it is a well-established principle of equity that a demurrer will not lie to an answer to a bill in equity, Burns v. Boone, 276 Ala. 286, 161 So.2d 488; Aniton v. Robinson, 273 Ala. 76, 134 So.2d 764; Flowers v. Auto Mut. Indemnity Co., 236 Ala. 30, 180 So. 705.

But as appellee points out, there is no assignment of error which takes the point that the trial court erred in sustaining demurrer to Paragraph 5 of respondents' answer.

█ If there was such an assignment, we would not reverse because the trial court sustained the demurrer to Paragraph 5 of the respondents' answer. That paragraph did not purport to set up a defense to any claim asserted in the bill. It did not deny, confess or avoid any averment of the bill. Equity Rule 25. It was in effect simply a motion to strike the averments of Paragraph 5 of the original bill of complaint, and as such was improperly included in the answer. The trial court's action sustaining the demurrer to Paragraph 5 of respondents' original answer did not, in our opinion, probably injuriously affect the substantial rights of the appellant. Supreme Court Rule 45.

Appellant next argues that the trial court erred to a reversal in striking from Paragraph 6 of respondents' answer averments to the effect that the filing by Research of a "lis pendens" in the office of the Judge of Probate of Madison County placed a cloud upon the suit property "which has greatly restricted the respondents from diligently proceeding and completing the building which they have begun and which they have been ready at all times to fully complete and occupy."

Again appellee points out correctly that there is no assignment of error which takes the point that the trial court erred in striking averments from Paragraph 6 of "respondents' answer."

█ But if there was such an assignment we would not reverse on that ground because the respondents below were allowed to introduce into evidence two lis pendens notices and were allowed to introduce testimony as to the effect of the filing of such notices. It seems clear, therefore, that the trial court's action in striking the averments from Paragraph 6 of respondents' answer alluded to above did not probably injuriously affect the substantial rights of the appellant. Supreme Court Rule 45.

Appellant next argues together Assignments of Error 17 and 20. They read:

"17. That the Court erred in overruling the objections of Respondents in allowing Guy Nerren to testify as to whether the Board of Directors did act upon a request presented to the Board of Directors of Complainant's corporation (T–94)."

"20. That the Court erred in allowing Guy Nerren to testify over the objection of Respondents as to whether any of the property in the Research Park had ever been sold to any party for other than their own use as a research and development facility. (T–96)."

█ Appellee insists that these assignments of error do not comply with Supreme Court Rule 1 in that they are too general and hence should not be considered by this court. We do not agree. Each of the assignments refers to only one ruling of the trial court, which ruling is found on the page of the transcript to which we are referred. Each assignment charges error on the part of the trial court in making the ruling asserted to be erroneous. See Mer-

**158**

chants' Bank v. Zadek, 207 Ala. 84, 91 So. 815; Stapleton v. Stapleton, 282 Ala. 62, 209 So.2d 202. Assignments of Error 17 and 20 do not contain the vice found in the assignments of error held to be too general in the cases cited by appellee. In those cases the assignments of error held to be too general referred to more than one ruling of the trial court or the ruling referred to was not found on the page of the transcript cited.

The only ruling adverse to appellant which appears on page 94 of the transcript is as shown hereafter:

"Q. Then the Board did act upon the request?

"MR. MILLER [counsel for appellant]. Judge, I am going to object to what the Board did.

"THE COURT: Overruled."

The witness ultimately answered the question in the affirmative. The "Board" mentioned in the question to which the objection was interposed was the Board of Directors of Research Sites and the request referred to in the question was a request made by Tec to extend an option which had been granted to Tec Consolidated, Inc., but which had been terminated. Tec was a subsidiary of Tec Consolidated, Inc. If we understand the record, Tec might not have been able to acquire the suit property unless the option had been extended, which was a matter for decision by the Board of Directors of Research Sites. Consequently, we can see no possible injury to the appellant by the ruling made the basis of Assignment of Error 17. In treating said assignment in this manner we do not want to be understood as holding that the respondents' objection was well taken.

Assignments of Error 17 and 20 are unrelated and since we have held that Assignment 17 is inefficacious, we would give no consideration to Assignment of Error 20, except as will hereafter appear it is argued elsewhere in appellant's brief.

See Thornton v. Tutt, *supra*; Taggart v. Weinacker's, Inc., 283 Ala. 171, 214 So.2d 913.

Appellant next argues together Assignments of Error 20, 21 and 22. Assignment 20 is set out above. Assignments 21 and 22 read:

"21. That the Court erred in allowing Guy Nerren to testify after the objection of the Respondents as to whether the Board of Directors of Research Sites Foundation, Inc., established any policy regarding the building of office type buildings for commercial leasing in the Research Park (T96–97).

"22. That the Court erred in allowing Guy Nerren after objection by Respondents to testify as to whether there had been sales of land to any corporation to build a building other than for its own use in Research Park (T97)."

Appellee takes the position that Assignments 20, 21 and 22 are too general to be considered on this appeal. We have indicated our disagreement with this contention of appellant as to Assignments 17 and 20. We are of the same opinion in regard to Assignments 21 and 22. True, as appellant points out, pages 96 and 97 of the transcript each show more than one ruling of the trial court invoked by objections interposed by counsel for appellant. But only one of the rulings invoked can be directly related to Assignment 21 and only one ruling can be directly related to Assignment 22.

Assignments of Error 20, 21 and 22 raise related questions. Hence, the rule that where unrelated assignments of error are grouped and argued together, if one assignment is found to be without merit the other assignments argued with it will not be considered, is inapplicable. See Polytinsky v. Johnston, 211 Ala. 99, 99 So. 839; McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160; Boohaker v. Trott, 274 Ala. 12, 145 So.2d 179; Alabama Power Co. v. King, 280 Ala. 119, 190 So.2d 674; State v. Barnhill, 280 Ala. 574, 196 So.2d 691;

As we have heretofore shown, Tec is a subsidiary of Tec Consolidated, Inc., and the original option was executed on January 22, 1963, by Research Sites to Tec Consolidated, Inc. The original option contained provisions in all material respects identical to those provisions of the conveyance from Research Sites to Tec, which we set out in the third paragraph of this opinion.

The evidence shows that on May 23, 1963, Tec submitted to Research Sites for its approval a proposed amendment to the option which had been given to Tec Consolidated, Inc. The proposed amendment contained, among other provisions, the following:

"* * * It is agreed that this condition may be satisfied by Optionee using such structure for one of such purposes or by its using a part thereof for one of such purposes, and leasing or subletting space in the remainder of said structure to reputable firms or corporations, that are presently engaged in whole or in part in one or more of said endeavors or desire to acquire space therefor."

The Board of Directors of Research Sites would not agree to the amendment.

On June 26, 1963, Tec wrote a letter to Research Sites which contained the following statement:

"This letter will further clarify that we do not have any intention of conducting any type of business such as being property managers or agents or any type of commercial real estate venture. This letter will further support our previous correspondence to you of May 29, 1963, and is being furnished at your request."

Thereafter, on July 5, 1963, Tec wrote Research Sites a letter which contained the following:

"1. Tec-Productions will use the land under option from Research Sites Foundation Inc., only for its own purposes.

"2. Tec-Productions will use the building and facilities for our own purposes and do not intend to engage in commercial leasing to anyone outside our own organization."

It was after receiving these assurances from Tec that Research Sites agreed, in effect, to give to Tec the same option which had been granted Tec Consolidated, Inc., on January 22, 1963, and which had been terminated on May 24, 1963.

In view of the representations made by Tec to Research Sites as above set out, we are of the opinion that the trial court did not err to a reversal in permitting appellee to show by the witness Nerren that no property in Research Park had ever been sold to any party for other than its own use as a research and development type facility or in permitting the witness Nerren to testify that the Board of Directors of Research Sites had established a policy regarding the building of office type buildings for commercial leasing in Research Park or in permitting the same witness to testify as to whether there had been sales of land to any corporation to build a building other than for its own use in Research Park.

Such evidence, in our opinion, was admissible under that aspect of the bill which sought the cancellation or rescission of the conveyance from Research Sites to Tec on the ground that the representation made by Tec to Research Sites "was made with intention to deceive the complainant [Research Sites] and was made with no intention of fulfillment at the time when said false representation was made."

Moreover, we are of the opinion that the provisions of the conveyance from Research Sites to Tec which we have heretofore set out are sufficiently ambiguous to justify the admission of such evidence. See Pritchett v. Wade, 261 Ala. 156, 73 So.2d 533.

There is yet another reason why we do not believe that the rulings of the trial court made the basis of Assignments of Error 20, 21 and 22 should work a re-

versal of the decree of the trial court here under review. We have frequently said, in effect, that prejudicial error may not be predicated on the admission of evidence which has been admitted without objection or motion to exclude at some other stage of the trial. Turner v. Blanton, 277 Ala. 536, 173 So.2d 80; Schoen v. Schoen, 271 Ala. 156, 123 So.2d 20; Harvey Ragland Co. v. Newton, 268 Ala. 192, 105 So.2d 110; Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633; Simmons v. Cochran, 252 Ala. 461, 41 So.2d 579.

There was evidence substantially to the same effect as that of which appellant complains in its Assignments of Error 20, 21 and 22 which was admitted without any objection on the part of appellant except that the connection between Tec Consolidated, Inc., and Tec Productions, Inc., had not at that point in the trial been established. That connection was later proven.

For the above reasons, we are of the opinion that the rulings of the trial court made the basis of Assignments of Error 20, 21 and 22 should not work a reversal of the decree of the trial court here under review.

■ Appellant argues its Assignment of Error 23, which is incorrectly referred to in appellant's brief as Assignment of Error 24. That mistake does not prevent us from considering Assignment of Error 23. See Brooks v. Everett, 271 Ala. 380, 124 So.2d 100; Commercial Standard Ins. Co. v. New Amsterdam Casualty Co., 272 Ala. 357, 131 So.2d 182.

Assignment of Error 23 reads:

"That the Court erred in allowing Guy Nerren to testify after Respondent's objection as to the selling price of other lands adjacent or contiguous to the Research Park area. (T104–105)."

What we have said in answer to appellee's contention that Assignments of Error 17 and 20 are too general answers appellee's insistence that Assignment of Error 23 is too general.

Nerren was called as a witness by the appellee, the complainant below. On direct examination he was not called upon to testify as to the value of the suit property or as to the value of any other property. But on cross-examination, in answer to questions propounded by counsel for the respondents below, Nerren testified without objection that the suit property sold for $3,000 an acre; that "some property which is adjacent to that property [suit property] has been sold recently for $3,750 or for $4,250." The land recently sold was not shown during the cross-examination of Nerren to have been in Research Park. On redirect Nerren testified, without objection, that the price per acre of land in Research Park at the time the suit property was sold was $3,000. On further questioning by counsel for appellee, on redirect examination, Nerren stated that he was familiar "to some extent" with land "outside of the park." Counsel for appellee, on redirect, then propounded a question to Nerren seeking to elicit evidence from him as to the selling price of the land outside the Park. Appellant's objection to that question was sustained on the ground that Nerren had said that he was only familiar with the land outside the Park "to some extent." One of the attorneys for appellee then addressed the court as follows:

"If the Court please, we would offer to prove by this witness that at the time Tec Productions, Inc., bought this property in Research Park at $3,000 per acre, property right across the fence was selling for $10,000 an acre, and they got a tremendous advantage by having the privilege of buying land in Research Park."

Thereafter the following occurred on further redirect examination of the witness Nerren:

"Q. Do you know the price at which property outside the Park was selling at that time?

MR. MILLER [Counsel for appellant]: Judge, I am going to object. I base my objection on the fact that out-

side the park, close proximity, and so forth and so on, would be immaterial and irrelevant to this particular issue.

MR. RICHARDSON [Counsel for appellee]: We would repeat our offer of proof, Your Honor.

THE COURT: Well, I am going to overrule. But make it adjacent to it, contiguous or some such thing.

Q. Adjacent to Research Park, contiguous to Research Park.

A. Property that was adjacent to the Park was selling for $10,000 an acre and up."

▮ Evidence as to the sales price of other land adjacent or contiguous to the suit property was immaterial and irrelevant to any of the issues in this case, if we have correctly determined the issues. But it was respondent that first elicited evidence as to the price for which land "adjacent to the suit property" was recently sold and, as we have indicated, the respondent did not limit the inquiry as to other recent sales price of land situated in Research Park. The land about which Nerren testified on cross-examination could have been outside Research Park, and yet it could have been adjacent to the suit property. Consequently, we do not think the trial court erred to a reversal in overruling the respondent's objection to the question propounded by counsel for appellee to the witness Nerren on redirect examination: "Do you know the price at which property outside the park was selling at that time?", which question the trial court did not permit Nerren to answer until it was shown that his answer would relate to land adjacent or contiguous to Research Park.

In brief filed on behalf of appellant it is said: "The court has held in State v. Donaldson, 209 Ala. 400, 96 So. 617, and State v. Brintle, 207 Ala. 500, 93 So. 420, that evidence concerning the valuation of adjoining or adjacent property is not admissible to establish the valuation of a particular tract or parcel of land." *Donaldson*

and *Brintle* are, perhaps, apt authority for the proposition for which they are cited. Yet we find the appellant seeking to reverse the trial court because it permitted appellee to adduce evidence as to the sales price of property adjacent to Research Park after counsel for appellant on cross-examination of Nerren had inquired of him as to the sales price of lands adjacent to the suit property, which is in Research Park.

Moreover, no objection was interposed to the question presently under consideration, which appellee propounded to Nerren on redirect examination, on the ground that evidence of the sales price of land adjoining or adjacent to the suit property was not admissible.

In cases where the issue, or one of the issues, is the value or sales price of property, the subject of the litigation, we have said that evidence as to the sales price of other lands which were sold voluntarily is admissible, if the conditions surrounding the two tracts of land are similar and if the sale was neither too remote in point of time nor of such a character as to indicate that it did not represent the true value of the property. Davis v. Reid, 264 Ala. 560, 88 So.2d 857; Southern Electric Generating Co. v. Leibacher, 269 Ala. 9, 110 So.2d 308.

Appellant did not object to the question propounded Nerren on redirect examination on the ground that it called for hearsay testimony. No evidence had been adduced up to that point which would in any wise indicate that Nerren did not know of his own knowledge the price which had been paid for the other land. It was brought out on re-cross-examination that his testimony in that regard was based on hearsay but there was no motion to exclude his testimony on the ground that it was hearsay. We pretermit the question as to whether a motion to exclude on the ground that Nerren's testimony relative to the sale price of land outside of but adjacent to Research Park was hearsay would have been well taken, since no such motion was made.

We hold that the ruling of the trial court made the basis of Assignment of Error 23 does not constitute reversible error.

We come now to a consideration of Assignments of Error 29, 30, 31 and 32, which are to the effect that the trial court erred in ordering in the final decree as amended that the appellant, Astronautical Development Company, Inc., hereinafter referred to as Astronautical, convey the suit property to appellee, in that such order is contrary to the evidence.

Appellant does not contend that the provisions of the conveyance from Research Sites to Tec, which are set out in the third paragraph of this opinion, are not binding on appellant, as the grantee of Tec.

It is appellant's insistence that the evidence shows that within one year from August 23, 1963, the effective date of the conveyance, it began construction on the suit property of "a research or development or manufacturing or testing or related facility."  ·

We will summarize the evidence as it bears on that insistence.

The first activity by Astronautical which it contends shows an intention or effort on its part to construct a building on the suit property was on July 24, 1964, when its representative went to the office of a Huntsville architect, Thomas A. Jones, with a "schematic drawing" or "topographical survey " of the suit property. On that occasion Jones was employed by Astronautical to prepare plans and specifications for an office building to be constructed on the suit property at a cost of $25,000. He was also employed to "inspect the construction of the building." On August 1, 1964, Jones was told by a representative of Astronautical that the "target date was August 23, 1964." Jones delivered two sets of plans and specifications to a representative of Astronautical on August 17, 1964. Some revisions were made in the plans and specifications on August 19, 1964. Jones was paid $1,200 for the plans and specifications. The remainder of his fee was to be paid "when we

do the rest of our supervision and so on, which we will perform during the rest of the construction job."

Max R. Powell, a consulting engineer and general contractor of Huntsville, was contacted "in the first several days" of August, 1964, by Astronautical, at which time Powell entered into a verbal agreement with Astronautical's representative to do certain construction and engineering work on the suit property. He was given a site preparation plan, or a plat plan, showing the proposed building location, roads, and parking lot. He was asked "to stake it out and to grade the roads and parking lot to the grades as shown on the drawings." Powell visited the "site" on August 4, 1964. On the next day "it was staked out" and on August 6, 1964 site preparation was begun. Site preparation consisted of grading a "semicircular" access road, which was "tied onto the existing road;" scraping vegetation and "other matter" off the land where the building was to be constructed; preparing a parking lot in front of the place where the building was to be located; and filling in several low places. Powell moved about 3,500 cubic yards of dirt. He did not gravel or pave the road. He did not provide any drainage facilities. Powell was paid the sum of $682.50 for his work, which was all that was due him. He was paid a fixed fee for his engineering services and he was paid on an "hourly basis" for his equipment used in the moving of dirt. He did not have a contract with Astronautical for any additional work. Powell or his employees worked at the site of the suit property for four days.

Joseph M. Maner, who does contracting work was "hired" by Astronautical to "build this building." He was hired before Astronautical received the plans and specifications. He was asked by Astronautical's representative to "build the building on an hourly basis" because Astronautical "was in a hurry to get started on it." He and Astronautical's representative did not have time "to figure out a contract and start to building the building and everything on the

same day." Astronautical's representative told Maner, "We will start working on the building and will either go cost plus or we can sign a contract, flat contract, either way." After his conversation with Astronautical's representative and after he had obtained a copy of the plans and specifications from Jones, the architect, Maner secured a building permit from the City of Huntsville on August 18, 1964. Maner testified that on the day he secured the building permit "we measured off and got the building placed where it was supposed to be" according to the architectural "drawings"; that on the same day "we put up some batter boards and leveled it off and squared it up"; that on the 18th or 19th of August, 1964 ditches about two feet wide and one foot deep were dug. Maner further testified that the ditches were referred to in the building trade as "footings" and were dug "for the entire perimeter of the building"; that on the 20th of August, 1964, the "footings" were inspected by a representative of the City of Huntsville, who advised that "it is OK to pour"; that on the same day the last "steel rods" were placed in the "footings" and about seventeen yards of concrete was "poured" into the "footings" or "ditches." Between four and five hundred linear feet of ⅝ inch steel rods were used. On August 20, 1964, a representative of Astronautical told Maner not to do any more work. According to Maner, on August 21, 1964, about three hundred concrete blocks and possibly some "tie wire" were delivered to the site. Two thousand blocks would have been needed in the construction of the building, and some of the blocks would have to be of a different size than those delivered to the site. Maner was paid the sum of $160 for his work. He was paid all that was owed him. The material used by Maner was charged to Astronautical.

It appears from the testimony of Astronautical's treasurer that the initial capital of Astronautical "in cash deposits was $9,000." The treasurer's testimony further shows that during the months of June through September of 1964 Astronautical's bank balance never exceeded the sum of $1,240.73. In fact, he testified that in August, 1964 Astronautical's cash balance varied "between $790 and $131." And that in September, 1964, Astronautical's cash balance "varied between $131 and $231." According to the treasurer's testimony, Astronautical had no assets other than the small amount of money in the bank, the architectural plans, the suit property, and the very limited amount of work which had been done thereon. At the time that work was done Astronautical had made no arrangements whereby it could secure funds needed to complete the building, which, as we have shown, would have cost $25,000 to complete  No interim financing had been secured, nor had a permanent loan commitment been issued or money paid for a commitment fee for a permanent loan commitment.

The evidence shows that Astronautical is simply a landholding company which "was primarily formed to set up a building lease program for Tec Productions." At the time that the limited work was done on the suit property, officials of Astronautical knew that Tec would not lease the building if it was completed. There was testimony adduced by Astronautical to the effect that it contemplated leasing the building, if completed, to General Astronautical Corporation. However, there was no agreement, written or otherwise, to that effect between Astronautical and General Astronautical Corporation, nor does the evidence show that Astronautical had an agreement from any other corporation or individual to lease the building, if completed.

Appellant cites and relies upon cases which involve the priority of mechanic's lien claims under the mechanic's lien statutes of several states. In those cases the question was one of notice to other lienors that work had been begun, an entirely different question from that presented in this case. We do not think the holdings in those cases are apposite to this case and we will not discuss them in this opinion.

The evidence which we have summarized above falls short, in our opin-

ion, of showing that the work which was done on the suit property in August of 1964 was commenced in pursuance of a design and plan to erect or have erected on the suit property "a research or development or manufacturing or testing or related facility." We do not think the evidence shows that at the time such work was done Astronautical had a present intention, then formed in good faith, or the financial capacity, to continue such work until the contemplated "facility" was completed. Lauderdale Power Co. v. Perry, 202 Ala. 394, 80 So. 476. We recognize the fact that Tec did not expressly covenant to continue the work which it covenanted to commence within one year from August 23, 1963, until the "facility" was completed. But it would be unrealistic to construe the language of the covenant otherwise. That such was the intention of Research Sites and Tec seems abundantly clear.

The appellant, Astronautical, argues that it was prevented from continuing with the construction of the "facility" on the suit property because of a recorded lis pendens notice which Research Sites filed in the office of the Judge of Probate of Madison County on August 10, 1964. It is true that such a notice was filed on that date by Research Sites. It was in connection with a suit similar to the case at bar which Research Sites filed in the Circuit Court of Madison County on or about August 10, 1964, against the respondents in this case seeking the same relief sought in this case. It is apparent that that suit was filed by Research Sites on the theory that the date of the deed, August 6, 1963, was the date on which the one-year period of time began to run rather than August 23, 1963, the date on which the deed was delivered. A demurrer was interposed by the respondents or one of them, which was sustained, and the suit was dismissed.

In our opinion the evidence in this case does not support a finding that the filing of the aforementioned lis pendens notice was, in fact, the reason why Astronautical instructed Maner to stop work. Maner se-

cured the building permit from the City of Huntsville on August 18, 1964, approximately one week after the lis pendens notice had been filed, and his work was performed on the 18th, 19th and 20th of August.

We have given careful consideration to each of the argued assignments of error and we find no merit in any of them. Therefore, the decree of the trial court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and MERRILL, HARWOOD, BLOODWORTH and MADDOX, JJ., concur.