272 So.2d 610

Henry E. **HOUSTON**

v.

**STATE.**

I Div. 284.

Court of Criminal Appeals of Alabama.

Jan. 23, 1973.

William J. Baxley, Atty. Gen. and Richard F. Calhoun, Asst. Atty. Gen., for the State.

Delano J. Palughi, Mobile, for appellant.

WALLACE, Circuit Judge.

Defendant appeals from a conviction for robbery with a sentence of ten years imprisonment.

I

The State's evidence is to the effect that around 6:30 P.M., August 17, 1971, Willie F. Watson, while on duty as manager of Watson's Apothecary in Mobile, Alabama, was robbed at gunpoint of approximately $111.00. The apothecary was well lighted with four rows of double eight-foot flu-

orescent lights. The person committing the robbery was in the immediate presence of Mr. Watson, being as close as two feet, "or closer", for five or six minutes and was engaged in brief conversation by Mr. Watson.

As soon as the robber left the store, Mr. Watson called the police and the report of the robbery was broadcast over the police radio immediately and was received by Prichard Patrolmen, C. D. Everett and Smith at approximately 6:30 P. M. The patrolmen were about one and a half miles from the scene of the robbery when they received the report and proceeded immediately to the scene and within two or three minutes after first receiving the report saw the automobile in which the defendant and two companions were riding emerging from the only exit to Watson's drug store. After a short chase, defendant's car was stopped and while the driver was getting his driver's license out, Officer Everett observed bullets on the rear floorboard. Upon seeing the bullets, Officer Everett ordered defendant and his two companions to get out of the automobile and when they had done so a search of the automobile was made which disclosed a "wad" of money stuck down between the back seat and the paneling of the automobile as well as two pistols, one being loaded, under the front seat on the passenger side. Two shirts were also found in the automobile. It was not shown from the evidence where the shirts were located nor was it shown whether the pistols and money were in plain view of the officers or where defendant and his companions were standing with relation to the automobile and such objects at the time they were seized.

A Polaroid picture of defendant was made by the officers at the place the car was stopped and then defendant was taken to the police station. Two of the officers went from the place where the automobile was stopped to the scene of the robbery. There they talked with the victim, Mr. Watson, and showed him the Polaroid pictures of defendant, along with pictures of several other persons, to see if he could identify either of them as the person who had robbed him. The victim was unable to identify defendant from viewing the pictures. An objection was sustained to an unresponsive answer made by one of the officers to the effect that Mr. Watson stated the reason he could not identify the defendant from the Polaroid picture was because the picture was too dark. No motion was made to exclude this answer.

Mr. Watson was taken to the police station where he identified the defendant from a line-up composed of defendant and six other persons. This line-up was held approximately one and a half hours after the robbery.

At the trial of the case, five months after the robbery, Mr. Watson testified concerning the robbery and his identification of defendant at the police line-up and made an in-court identification of defendant. No objection was made by defendant to the testimony of Mr. Watson concerning his identification of defendant at the police line-up and his further in-court identification of defendant as being the person who robbed him.

The officers testified without objection concerning the search of the automobile and the seizure of the money, pistols, and shirts.

The defendant testified in his own behalf and denied his guilt.

At the close of the case the trial judge, outside of the presence of the jury, made known to the lawyers his misgivings concerning the police line-up, expressing his view that it was not in keeping with the "Wade" decision of the United States Supreme Court. During this discussion, the District Attorney produced a Waiver of Counsel purportedly signed by the defendant prior to the line-up, whereupon, over the objection of defendant, the trial judge marked and introduced such waiver into evidence "as the Court's exhibit."

The defendant then moved to exclude all of the State's evidence upon the grounds that (1) improper suggestion, and error, was made by exhibiting defendant's photograph to the victim prior to the police station line-up and (2) the defendant was not represented by counsel at such line-up. Defendant's motion to exclude all of the State's evidence was overruled.

## II

The first claim of error is that it was not shown from the evidence that the line-up was performed properly and that it was not done in violation of the defendant's constitutional rights.

■ This court has examined the whole record and has found nothing to support defendant's claim of error in the manner in which the line-up was conducted. The line-up was composed of seven black males, as is the defendant, and nothing is shown in the record whereby any improper influence or suggestion was made in any manner upon the victim who viewed the line-up from behind a two-way mirror and identified the defendant approximately one and a half hours after having seen him in a good light from as close as two feet, and having been in his presence for five minutes and had a brief conversation with him.

■ Defendant complains of the fact that the victim was shown defendant's photograph prior to the line-up and argues that this was suggestive to the point that his subsequent identification and victim's testimony of such upon the trial violated his right to due process. It should be pointed out that for some reason, Mr. Watson did not recognize the defendant from the pictures shown him prior to the line-up. Therefore, it is hard to see how the act of showing him a number of pictures could have influenced his later identification of defendant at the line-up. Assuming the victim had been able to identify the defendant from the photographs shown

him, this, standing alone, would be insufficient to show improper suggestion to the extent that his later line-up identification would be inadmissible. In Simmons v. United States, 390 U.S. 377 p. 384, 88 S.Ct. 967 p. 971, 19 L.Ed.2d 1247 (1968), the Court said:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *"

See also People v. Caldwell, 117 Ill.App.2d 64, 253 N.E.2d 904. Assuming an identification, the Court finds nothing in the evidence to indicate any impermissible suggestiveness in the photographic identification procedure as to give rise to a very substantial likelihood of irreparable misidentification.

■ Moreover, the Court thinks that there was sufficient evidence before the trial court, already alluded to herein, to show that the in-court identification by the victim had an independent origin; hence,

fulfilling the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

■ The defendant also argues that error was committed because the defendant did not have counsel at the time of the line-up.

The United States Supreme Court in the recent case of Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), citing Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, stated:

". . . it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. * * *"

The Court held that a routine police investigation prior to the filing of formal charges, preliminary hearing, indictment, information or arraignment, as in this case, is not a formal prosecutorial proceeding, and, therefore, prior cases holding that a defendant is entitled to counsel at any "critical stage of the prosecution" do not apply.

■ No counsel being required, any error committed in the introduction into evidence by the Court of the Waiver of Defendant without proof that it was an "intelligent" waiver would be without injury.

### III

The next claim of error by the defendant is that the State presented as evidence during the trial testimony regarding some money, bullets, shirts and two pistols found in the car in which the defendant was a passenger and that, no search warrant having been first obtained, such search and seizure were unlawful.

■ No objection was made by the defendant to such testimony at the trial, nor was any motion to exclude made nor any request for verdict or instructions nor any motion for a new trial made by him on such ground. There is a long line of decisions which hold that our review is appellate in nature and we are limited to questions which are properly raised in the court below. This matter, not being raised in any manner in the trial court, cannot be raised here on appeal for the first time. Astronautical Development Company v. University of Alabama, Huntsville Foundations, Incorporated, 285 Ala. 149, 229 So.2d 783; Thompson v. Havard, 285 Ala. 718, 235 So.2d 853; Meeks v. State, 38 Ala. App. 172, 81 So.2d 616.

The next claim of error by the defendant are three remarks made by the District Attorney in his closing argument to the jury. They are:

1. "Here's a twenty-three year old man not working for a year prior to this robbery."

2. "Where does a man get money if he's not working? We hope they don't go out and rob in this town, but . . . ."

3. "He got laid off in December of 1970, and he was drawing welfare checks."

■ As to the first statement quoted above, this is simply a comment by the District Attorney upon testimony the defendant gave upon direct examination. Defendant was asked and stated that he had been in the United States Air Force three years, having "gotten out" in February of 1970. He then stated, in response to a question by his attorney, that he had worked for Alabama Dry Dock and Shipbuilding Company and International Paper Company and that he had not worked at all since December, 1970. This court fails to see where defendant's work history is relevant but the defendant injected it into the

case and no prejudicial error was made by the State in the District Attorney's comment upon it.

■ The first part of the second statement is a further comment on defendant's testimony that he was not working. In objecting to this statement, defendant's attorney stated that the District Attorney was "trying to imply that the defendant did anything other than what he is accused of today." We do not agree and find no prejudice therein.

■ As to the third statement quoted above, the evidence showed that the defendant was drawing unemployment compensation. The objection to the District Attorney's statement was that it was a "direct fabrication. He wasn't drawing welfare checks." The court ruled "as to welfare checks, I sustain the objection; it's not based on the evidence." No further action was requested of the court in relation to this statement. This court does not believe that this statement was so prejudicial that its improper influence, if any, could not have been removed by proper instruction.

## IV

### Conclusion

We have considered the entire record under Code of Alabama 1940, Tit. 15, § 389, and conclude that the judgment below is due to be affirmed.

The foregoing opinion was prepared by Hon. Jack W. Wallace, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of § 38, Tit. 13, Code 1940, as amended; the Court has adopted his opinion as its own.

The judgment below is hereby

Affirmed.

All the Judges concur.