# Richmond.

Peoples Pleasure Park Company (Inc.) and Others v. Rohleder.

June 11, 1908.

Rehearing.

March 11, 1909.

1. Covenants—*Restrictive Provisions—Vesting in "Colored" Persons—Corporations.*—A restriction in the conveyance of land to the effect that "the title of this land is never to vest in a person or persons of African decent," or "colored persons" is not violated by a subsequent conveyance of the land to a corporation, organized "to establish and develop a pleasure park for the amusement of colored people." The contemplated use is not prohibited by the restriction nor is the title conveyed to a forbidden person. A corporation is an artificial being totally distinct from its stockholders and directors.

2. Deeds—*Conditions Subsequent — Construction.*—Conditions subsequent are not favored in law, because they tend to destroy estates, and a party who insists upon a forfeiture for a breach of such a condition must bring himself clearly within the condition.

Appeal from a decree of the Circuit Court of Henrico county. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*Smith, Moncure & Gordon,* for the appellants.

*Samuel A. Anderson* and *George C. Gregory,* for the appellee.

Cardwell, J., delivered the opinion of the court.

Appellee filed her bill against appellants, the purposes thereof being to annul a conveyance of certain lands located in Henrico county, and known as Fulton Park, to appellant, Peoples Pleasure Park Co., Inc., from its co-appellants, Ida M. Butts and D. G. Fulton, and perpetually to enjoin and restrain the Peoples Pleasure Park Co., Inc., from selling or otherwise disposing of the said property, or any part thereof, to colored persons for any purpose whatsoever, or to any person for the purpose of using the same as a public park or place of amusement for colored persons.

It is averred that in the year 1900, Bliss Black and wife acquired from the heirs of one Samuel Mosby, deceased, title to a tract of about one hundred and twenty-five acres of land in Henrico county, near Fair Oaks station, at the junction of the Southern Railway with the electric railway running from Richmond city to Seven Pines, and platted the same, under the name of Fulton Park, into 1330 lots, recording a small part of the plat—105 lots—in Henrico county clerk's office; that between the date of said purchase and the beginning of the controversy out of which this litigation arises, there were a number of conveyances of said tract of land (except the small number of lots that had been sold therefrom), but these conveyances were to parties who either represented the Blacks, or were identical in interest with them; that it was the original intention of the Blacks to establish a settlement of white persons at Fulton Park, and representations were made to that effect by them, both in oral statement when trying to sell lots, and in published advertisements of the lots for sale in newspapers, in printed handbills posted, etc.; that about thirty, only, of the lots were sold by the Blacks or their associates, of three of which, with a small dwelling thereon, appellee, on October 5, 1904, became the owner, having purchased the same for a home from Harriet J. Powers, who took from Ida N. Butts during the time that the

latter held title to all the lots in Fulton Park, except such of them as had been previously sold and conveyed by her or the Blacks; that in the deed to Harriet J. Powers, appellees' grantor, there was the covenant, condition or stipulation in these words: "The title to this land never to vest in a person or persons of African descent;" and the deed to appellee was made subject to the limitations and restrictions contained in the deed to Harriet J. Powers.

It is further averred, that after the title to the remaining land (Fulton Park) had again been acquired by Black and wife, they conveyed it as a whole to the Revere Beach County Fair and Musical Railway Co., excepting the lots previously sold, and in this conveyance is the covenant, condition and stipulation: "The title to this land never to vest in a colored person or persons;" that afterwards the Revere Beach Fair and Musical Railway Co., transferred the property to one Jessie M. Smith, providing in the deed that the same should be subject to the covenant, condition or stipulation imposed thereon by Black in his deed to the company; that after Jessie M. Smith had held the property a few months she transferred the title thereto by a conveyance from herself as an individual to herself as trustee, without specifying the nature of the trust or naming the beneficiary or beneficiaries thereof and omitting mention of the "covenant, condition or stipulation" under which she had held the property, as an individual; that Jessie M. Smith, as trustee, but without disclosing the nature of the trust or the beneficiary or beneficiaries thereof, conveyed the property again to Ida M. Butts, trustee, making no mention of a restriction upon the latter's power to alienate the property, or as to whom she might convey it; and that on or about May 3, 1906, a deed was recorded in the clerk's office of Henrico county, by which all the unsold portion of Fulton Park was conveyed by Ida M. Butts to one D. G. Fulton, who by deed recorded in the same office, on the same day, conveyed the property to appellant, Peoples Pleasure Park Co., Inc.

The bill then charges that the Peoples Pleasure Park Co. is a corporation composed exclusively of negroes, and that this corporation purchased Fulton Park for the express purpose of converting the same into a park or place of amusement for colored people; that the corporation, before it purchased the property, was fully apprised of the "condition, covenant or stipulation" theretofore in the bill mentioned as having been incorporated in the deed conveying the property to the Revere Beach County Fair and Musical Railway Co., and also aware of the pendency of injunction proceedings to prevent said appellant from acquiring title to Fulton Park.

It will be observed, therefore, that appellee rests her right to the relief she seeks upon the ground that the "covenant, condition or stipulation" repeatedly mentioned is a covenant real running with the land, made for the protection of each and every person who became the owner of a lot in Fulton Park. In other words, the gravamen of her bill is that the restriction in the deed to her immediate grantor, and in other deeds made by Black and wife, or their associates, to other grantees, none of which were signed by the grantees, that the title to the lot or lots conveyed should never vest in "a person or persons of African descent" or "colored persons," was made applicable to each and every lot in Fulton Park, and a property right of each individual owner of a lot; whereby appellee is entitled to have the court, in the exercise of its equitable jurisdiction, declare the conveyance of the residue of the Fulton Park land to the Peoples Pleasure Park Co., Inc., null and void, and the title to the property it purports to convey forfeited.

Accordingly, the prayer of the bill is that the alleged contract or agreement made by Black and wife, that the whole of the property known as Fulton Park should be limited exclusively to the occupancy, use and ownership of white persons, be enforced, and to that end the deed from D. G. Fulton to appellant, Peoples Pleasure Park Co., Inc., be declared null and void and of no effect; that the Peoples Pleasure Park Co., Inc.,

its agents, etc., be enjoined and restrained from selling or otherwise disposing of the property (Fulton Park), or any part thereof, to colored persons for any purpose whatever, or to any person for the purpose of using the same as a public park or place of amusement for colored persons, etc.

Upon the hearing of the cause on the bill, the demurrers and answers of appellants thereto, the exhibits filed with the pleadings, and the depositions of witnesses, the circuit court overruled the demurrers, and by its decree under review held, that the restriction on alienation of the lands in the Fulton Park tract, relied on by appellee, was repugnant to the grant in the deeds containing the restriction, was an unreasonable restraint on alienation, was contrary to public policy and, therefore, null and void; but, after reciting that appellee had been misled in the purchase of her three lots in Fulton Park, decreed that appellants pay to her the market value of her property, as a condition to having the temporary injunction awarded in the cause dissolved; and that, as appellants would not then consent to do that, the injunction be perpetuated with costs to appellee.

The first question, and, in the view this court takes of the case, the only question, requiring consideration is whether or not the circuit court ered in overruling the demurrer of appellants to appellee's bill.

Bliss Black and wife, who formerly owned the Fulton Park land, and who, it is alleged, made public, in the manner mentioned, their purpose and determination that no portion of the land should be sold to colored people, but would be exclusively and permanently devoted to the use, occupancy and possession of white people, are not even made parties to the bill. But if this had been done, and it were conceded that the restriction on alienation to a person or persons of African descent contained in the deed to appellee's immediate grantor and to others, from Black and wife or their associates, is not an unreasonable restraint on alienation and not contrary to public policy, as to which it is not necessary that we express an opinion, has this

restriction been violated by the conveyance which appellee seeks to have declared null and void?

The deeds exhibited with the bill, conveying lots in Fulton Park to individual purchasers, and the deed of the residue of the land to the Revere Beach County Fair and Musical Railway Co., were conveyances in fee-simple with general warranty and all the usual covenants of title; and between the grant of a fee-simple estate, followed by a description of the property, and the covenants of title, appears this language: "Subject to the following restrictions: the title to this land never to vest in a person or persons of African descent," or "colored person." If the conveyance to appellant corporation, Peoples Pleasure Park Co., was not a conveyance to "a person or persons of African descent" or "colored persons," it is clear that the bill is fatally defective on demurrer, since the parol conditions upon which appellee alleges she bought her lots cannot be engrafted on the deed containing the restriction. Dev. on Deeds, sec. 976. Even if the restriction could be construed as a covenant on the part of the grantors, still the covenant could not be extended by implication, but it is limited by its very terms to a prohibition against the vesting of the title in "a person or persons of African descent," or "colored persons," nothing being said as to the use of the property.

It is well settled that conditions subsequent are not favored in law, because they tend to destroy estates. When relied upon to work a forfeiture, they must be created by express terms, or clear implication, and are strictly construed. *King* v. *N. & W. R. Co.,* 99 Va. 625, 39 S. E. 701; *N. Y. Indians* v. *United States,* 170 U. S. 1, 42 L. Ed. 927, 18 Sup. Ct. 531; Dev. on Deeds, sec. 959.

"Nothing is better settled than that in conditions subsequent, since they are in defeasance of interests already vested, courts of law and courts of equity are strict in requiring the *very event,* or the act to be done, with all its particulars, which is to defeat the interests previously vested. * * * As was said by Lord

Alvanly, 5 Vesey's Rep. 209, 'Where there are clear words of gift, creating a vested interest, the court will never permit the absolute gift to be defeated, unless it be perfectly clear that the very case has happened in which it is declared that the interest shall not arise.'" *Lewis* v. *Henry,* 28 Gratt. 192-203. See also *Alex. & Wash. R. Co.* v. *Chew,* 27 Gratt. 547; *Wolverton* v. *Hoffman,* 104 Va. 605, 52 S. E. 176.

The foregoing rule is applied where a grantor or his heirs are seeking to take advantage of a breach of a condition subsequent, and *a fortiori* is the rule to be applied where its benefits are invoked by one not a party to the deed or conveyance containing the condition.

"A condition cannot be extended beyond its terms, and a party who insists upon a forfeiture of an estate for a breach of a condition must bring himself clearly within the terms of the condition." Dev. on Deeds, sec. 973 and note.

Aside from the question, whether or not appellee could obtain the relief she asks against appellants—that is, an annulment of the conveyance to appellant, Peoples Pleasure Park Co., Inc.—on the ground that the restriction on the right of alienation of any of the Fulton Park land to "a person or persons of African descent" or "colored person" had been violated by a sale of a part of the land to said appellant, the bill fails to allege facts showing a violation of the restriction, and should have been dismissed upon the demurrers thereto. Such a conveyance, by no rule of construction, vests the title to the property conveyed in "a person or persons of African descent." Although a copy of the charter of the grantee is filed as an exhibit with the bill and made a part thereof, and which sets out that the object for which the corporation is formed is "to establish and develop a pleasure park for the amusement of colored people," a contemplated sale of the property to "a person or persons of African descent" is not even alleged, but only a contemplated use of the property as a place of amusement for colored persons, which the restriction relied on neither expressly, nor by implication, prohibits.

"A corporation is an artificial person, like the State. It has a distinct existence—an existence separate from that of its stockholders and directors." I Cook on Corp. (4th ed.), sec. 1.

Professor Rudolph Sohm, in his Institutes of Roman Law, pp. 104-106, says: "In Roman law, the property of the corporation is the sole property of the collective whole; and the debts of a corporation are the sole debts of the collective whole. * * * * It represents a kind of ideal private person, an independent subject capable of holding property, totally distinct from all previously existing persons, including its own members. It possesses, as such, rights and liabilities of its own. It leads its own life, as it were, quite unaffected by any change of members. It stands apart as a separate subject or proprietary capacity, and, in contemplation of law, as a stranger to its own members. The collective whole, as such, can hold property; its property, therefore, is, as far as its members are concerned, another's property, its debts another's debts. * * * Roman law contrived to accomplish a veritable masterpiece of juristic ingenuity in discovering the notion of a collective person; in clearly grasping and distinguishing from its members the collective whole as the ideal unity of the members bound together by the corporate constitution; in raising this whole to the rank of a person (a juristic person, namely), and in securing it a place in private law as an independent subject of proprietary capacity standing on the same footing as other private persons."

Marshall, C. J., in the *Dartmouth College Case,* 4 Wheat. 518, 4 L. Ed. 629, defined a corporation as, "an artificial being, invisible, intangible, and existing only in contemplation of law."

In Green's Brice, Ultra Vires (2nd Am. ed.), secs. 1, 2, it is said, that "a corporation is a person which exists in contemplation of law only, and not physically."

The same author, in commenting on Kyd's definition, says: "But sufficient stress is not laid upon that which is its real

characteristic in the eye of the law, viz., its existence separate and distinct from the individual or individuals composing it. * * * This is the one important fact. The members of a corporation aggregate, and the one individual who is constituted a corporation sole, may, from their connection with such, have rights and privileges, and be under obligations and duties, over and above those affecting them in their private capacity; but they get them by reflection, as it were, from the corporation. They individually are not the corporation—cannot exercise the corporate powers, enforce the corporate rights, or be responsible for the corporate acts."

In *Stewart & Palmer* v. *Thornton*, 75 Va. 215, the syllabus of the case is as follows: "The county school boards are, by act of assembly, constituted a corporation, and a suit to recover a fund belonging to the corporation must be brought in its corporate name. A suit by persons styling themselves the directors of the county school board of their county cannot be maintained." In the opinion by Burks, J., referring to the rule that a corporation must sue and be sued by its corporate name, it is said: "Like a natural person 'it is recognized in law only by its name, and in its corporate capacity, rights and liabilities, it is as distinct from the persons composing it as an incorporated city is from an inhabitant of the city.'" Further recognizing the corporation as a legal entity, distinct from the persons composing it, the opinion in that case, quotes from Judge Denio, in *People* v. *Fulton*, 11 N. Y. Rep. 94, as follows: "Incorporated religious societies are aggregate corporations, and whatever property they acquire, whether it be real or personal, is vested in interest in the body corporate; and while the officers have it under their control or dominion, whatever possession they have is the possession of the artificial person whose agents they are. Although called trustees, they do not hold the property in trust for the corporation or the religious society. The name is simply the title of their office, and their position respecting the corporate property would be the same if they were denomi-

nated directors or managers. Their right to intermeddle is an authority, and not an estate, or title. They have no other possession than the directors of a bank have of the banking house. This would be so *upon general principles relating to the legal nature of corporations,* apart from the particular language of the act concerning religious corporations."

For the above reasons, we are of opinion that the decree complained of is erroneous, and it will be set aside and annulled, the demurrers of appellants to the bill sustained, and the bill dismissed with costs to the appellants.

On rehearing March 11, 1909.

BUCHANAN, J.:

A decree was rendered in this cause on the 11th day of June, 1908, which upon a petition to rehear was set aside.

Upon a careful consideration of the case upon the rehearing, we find no occasion to depart from the conclusion reached upon the original hearing.

For the reasons given, and upon the authorities cited in the opinion then delivered, the decree entered at that time is approved and will be adhered to.

*Reversed.*