### Richmond

## Trailsend Land Company

### v.

## Virginia Holding Corporation

Record No. 811906.

October 12, 1984.

Present: All the Justices.

*R. Harvey Chappell, Jr. (Paul G. Turner; Paul W. Jacobs, II; Bruce A. Templeton; Herbert K. Bangel; J. Darrell Foster; Jonathan B. Hill [D.C.]; R. Bruce Beckner [D.C.]; Christian, Barton, Epps, Brent & Chappell; Bangel, Bangel & Bangel; Dow, Lohnes & Albertson [D.C.],* on briefs), for appellant.

*Jack E. Greer (Samuel J. Webster; Williams, Worrell, Kelly & Greer, P.C.,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This is a dispute over the ownership of a 623-acre tract of land in Portsmouth, Virginia. On October 17, 1974, Virginia Holding Corporation (VHC) sold the land to Trailsend Land Company (Trailsend) for approximately four million dollars. The deed contained a repurchase option which reads in pertinent part as follows:

> It is mutually agreed between the parties hereto, that the property hereby conveyed and described in Exhibit "A," is to be used for any one or more of the following purposes: the production, handling, processing, distribution or storage of petroleum and other hydrocarbons.
> If construction of facilities for the purposes last above enumerated has not been commenced within six years from the

date hereof, Grantor shall have the option to repurchase the property described in Exhibit "A," within the next ensuing period of one (1) year for the same consideration as that paid by Grantee to Grantor herein. . . .

Trailsend attempted, for almost six full years, to construct an oil refinery on the property. In this effort, it spent approximately six million dollars, excluding the purchase price of the property. As the October 17, 1980 cut-off date approached, it became apparent to Trailsend that Trailsend would not be able to commence construction of the planned refinery. More than one month before the expiration of the six-year period described in the deed, plans were put into effect to build two petroleum storage tanks. Approximately 10 days before the deadline, work began at the site. Concrete foundations were poured for both tanks, and as of October 17, 1980, one of the eight-foot high steel rings that make up the walls of the first tank was in place and a second ring was under construction.

On October 15, 1980, Trailsend wrote VHC advising that it had commenced construction pursuant to the deed and demanding a deed of release. VHC refused to provide such a deed. In VHC's view, the work done by Trailsend on the property was not sufficient to comply with the terms of the deed. On October 20, 1980, VHC sued Trailsend for specific performance, demanding that the land be returned to VHC and stating that VHC was ready, willing, and able to return the purchase price. Trailsend denied VHC's contentions and filed a cross-bill in which it sought to quiet title to the property and secure specific performance on its own behalf in the form of a deed of release from VHC.

The Chancellor heard evidence *ore tenus* which included testimony concerning negotiations leading to the execution of the deed, testimony concerning communications between the parties after the execution of the deed, and other evidence, the bulk of which related to efforts on the part of Trailsend to construct a refinery. At the conclusion of the hearing, the trial court ruled in favor of VHC and ordered Trailsend to return the land, by appropriate deed, to VHC.

In its letter opinion, the trial court explained its ruling in the following manner: The deed was unambiguous but parol evidence was nevertheless admissible not to vary the terms of the deed, but to show the "circumstances attending its execution," and "the

construction placed upon it by the parties." The trial court also stated that "[w]hile the language in the deed does not require or limit the use of the property to the construction of an oil refinery, the evidence is clear that this was the defendant's intent." The trial court then concluded as follows:

Taking into consideration the purpose of the language of the deed in examining the evidence of the extent of activity on the property, the court is of the opinion that there was not a commencement of construction of facilities for the purpose enumerated within the time prescribed. There was no commencement of the construction of an oil refinery nor were there the necessary permits, source of crude oil or financing therefor. The activities on a part of the property of a facility later to be operated in conjunction with a refinery was minimal, without plans for or commitments to its completion and insufficient to amount to a commencement of construction.

On appeal, Trailsend contends, in essence, that though the deed gave it the right to commence construction relative to any of five types of facilities for use with hydrocarbons, the trial court penalized it for not commencing construction of a refinery, which, according to Trailsend, was only one of the five permitted uses. Trailsend contends that the trial court erred in failing to hold that Trailsend had commenced construction of a permitted facility within the time limits set forth in the deed. Trailsend contends further that the trial court erred in not strictly construing the repurchase option; in failing to place the burden of proof upon VHC to establish that Trailsend did not commence construction on time; in admitting into evidence any testimony for use in construing the deed; and in admitting into evidence irrelevant evidence of Trailsend's intention to build a refinery. We agree with Trailsend's contentions; therefore, we will reverse the judgment of the trial court.

Trailsend argues that options to repurchase are not favored in the law and are to be strictly construed against the grantor. Trailsend is correct. An option to repurchase is a condition subsequent. *See* G. Thompson, *Commentaries On the Modern Law of Real Property* § 1875, at 573 (1979). When a grantee takes property subject to a condition subsequent this means that the grantee, though vested with an estate in land, can become

divested of that estate if the condition is broken. Put another way, the grantee can forfeit his interest in the property. It has long been the law in the Commonwealth that such forfeitures are to be avoided:

> . Nothing is better settled than that in conditions subsequent, since they are in defeasance of interests already vested, courts of law and courts of equity are strict in requiring the *very event*, or the act to be done, with all its particulars, which is to defeat the interest previously vested.

*Lewis* v. *Henry's Executors*, 69 Va. (28 Gratt.) 192, 203 (1877). *Accord Martin* v. *Housing Authority*, 205 Va. 942, 140 S.E.2d 673 (1965); *Peoples Pleasure P. Co.* v. *Rohleder*, 109 Va. 439, 61 S.E. 794 (1909). In *Lewis*, we emphasized the critical importance of holding the grantor to the precise conditions contained in the deed. We quoted *Harrison* v. *Foreman*, 31 Eng. Rep. 549, 550, 5 Vesey Jr. 207, 209 (Ch. 1800), as follows:

> [W]here there are clear words of gift, creating a vested interest, the court will never permit the absolute gift to be defeated, unless it be perfectly *clear* that the *very* case has happened in which it is declared that the interest shall not arise.

*Lewis* v. *Henry's Executors*, 69 Va. (28 Gratt.) at 203. *See* G. Thompson, *supra*, § 1876, at 581. There is little question that VHC's deed should have been strictly construed against VHC with respect to the repurchase option. Upon our review of the record, we do not think that the trial court adhered to this rule of strict construction. It is apparent to us that the trial court found in favor of VHC even though VHC failed to establish that the work done by Trailsend *did not* fall under *any* category of construction permitted by the deed.

Trailsend is also correct in stating that the burden was upon VHC to prove a breach of the condition subsequent. In *Schwarzschild* v. *Welborne*, 186 Va. 1052, 1058, 45 S.E.2d 152, 155 (1947), we discussed the burden of proof upon a person attempting to enforce a restrictive covenant:

> It is also the general rule that while courts of equity will enforce restrictive covenants where the intention of the parties is clear and the restrictions are reasonable, they are not

favored, and *the burden is on him who would enforce such covenants to establish that the activity objected to is within their terms.* They are to be construed most strictly against the grantor and persons seeking to enforce them, and substantial doubt or ambiguity is to be resolved in favor of the free use of property and against restrictions.

(Emphasis added.) Though in the instant appeal we are considering a condition subsequent instead of a restrictive covenant, there is no reason for the burden to be less upon one attempting to secure the benefit of a condition subsequent. This is so because the penalty for violating a condition subsequent is generally more onerous than for violating a restrictive covenant.[1] VHC's proof that Trailsend failed to build a refinery does not meet its burden of proving that Trailsend violated the condition subsequent.

Trailsend next complains that the trial court admitted evidence to explain the deed when no such evidence should have been admitted. According to Trailsend, the evidence of negotiations prior to the deed should not have been admitted because of the parol evidence rule, and the post-deed evidence of its intent to build a refinery should not have been admitted because it was irrelevant. Taking a slightly different approach, Trailsend contends that where a deed is clear and unambiguous, no parol evidence should be used to help construe it. The latter argument best applies to this appeal.

In our opinion, and in the opinion of the trial court, the language of the deed was clear and unambiguous. Where such is the case, a court called upon to construe such a deed should look no further than the four corners of the instrument under review. In *Camp* v. *Camp*, 220 Va. 595, 597-598, 260 S.E.2d 243, 245 (1979), which concerned construction of a deed that contained an inherent conflict in certain of its terms, we said the following about the use of parol evidence in the construction of deeds:

The prime consideration, as with any writing, is to determine the intention of the parties executing the instrument. *The intention,* including a finding as to the estate conveyed, *should be ascertained from the language used in the deed, if possi-*

---

[1] Typically, where a covenant is breached, the offending party must respond in damages, but where a condition subsequent is violated the offending party stands to forfeit the property. G. Thompson, *supra,* § 1875, at 570.

*ble* . . . . If the language is explicit and the intention is thereby free from doubt, such intention is controlling, if not contrary to law or to public policy, and *auxiliary rules of construction should not be used.*

(Citations omitted) (emphasis added). *Accord Amos* v. *Coffey,* 228 Va. 88, 320 S.E.2d 335 (1984). We expressed a similar view in *Woodson* v. *Smith,* 128 Va. 652, 656, 104 S.E.2d 794, 795 (1920), where we wrote that "[t]he rule is that when a deed is executed and accepted in performance of a prior preliminary contract, *the deed,* if unambiguous in its terms, and unaffected by fraud or mistake, *must be looked to alone* as the final agreement of the parties." (Emphasis added.) In this case, once the trial court concluded that the deed was clear and unambiguous, it was required to focus upon the language of the deed and from that source alone, construe its meaning. The voluminous testimony concerning what went on prior to the deed should have been excluded. The same is true for the testimony concerning post-deed efforts on the part of Trailsend to construct a refinery.

■ We must reject VHC's argument that the testimony was admissible to show the relationship of the parties and the construction they placed upon the deed. Though parol evidence of the type described by VHC will sometimes be allowed in cases of ambiguous contracts and other writings, that principle has no application to an unambiguous deed. Where a deed, clear in its terms, is to be construed, auxiliary methods of construction can not be used.

■ Reduced to its essentials, this was a simple case. According to the deed, Trailsend had six years in which to commence construction of any one of five types of facilities for use with hydrocarbons. If Trailsend commenced construction of any one of the facilities described in the repurchase option, then it owned the land outright. If Trailsend did not commence construction as called for in the deed, then VHC would have the option to repurchase the land for the original purchase price.

VHC proved the wrong case. It called an expert witness to establish that Trailsend had not commenced construction. However, on cross-examination, Trailsend established that in testifying that construction had not commenced, the expert had been relying upon the definition for commencement of construction of a refinery. The expert never focused upon whether Trailsend had com-

menced construction of another type facility permitted by the deed.

Moreover, that same expert witness gave testimony beneficial to Trailsend. He admitted that he visited the site and saw a tank which he described as a "slop oil *storage* tank." (Emphasis added.) He testified further that the tank he saw was "suitable for *storage* of hydrocarbons such as kerosene and diesel." (Emphasis added.) He then admitted that "tank erection had commenced." However, he contended that construction of a refinery had not commenced. In his testimony, VHC's expert established the weakness of VHC's case. The essence of his testimony was that Trailsend had not commenced construction of an oil refinery. Yet, this is a point Trailsend could concede without its having any bearing on the outcome of the case. The deed states that a storage facility was sufficient and VHC's expert conceded that work had commenced on such a facility.

Not only did the expert provide testimony supporting Trailsend's position, so did another witness for VHC. This lay witness was an employee of VHC's parent corporation. He was sent to visit the property on October 17 and 18, 1980. He, too, observed the construction of two tanks. In his own words, he saw "the beginning of construction of a tank." Further, he saw "a concrete . . . foundation." And, he observed a great deal of construction equipment and materials including a welding machine, an air compressor, a bulldozer, a flatbed truck, a crane, a stockpile of sand, and a stockpile of gravel. On cross-examination, he admitted that "[t]here was evidence that a steel tank was being erected."

■ Despite the testimony of its own witnesses which verifies that construction work was being done on the property, VHC contends that the work was insufficient to amount to a commencement of construction for any of the purposes set forth in the deed. In support of this argument, VHC relies on *Astronautical Development Co. v. University of Alabama*, 285 Ala. 149, 229 So. 2d 783 (1969), which VHC contends is factually similar. There, despite some construction activity on the land, the reviewing court ruled that construction had not commenced within the terms of the repurchase option contained in the deed. We are not persuaded by *Astronautical Development* because it is distinguishable on its facts.

In *Astronautical Development*, the grantee was required to begin to construct a research or development facility within one year

of the date of the conveyance. The deed was delivered August 23, 1963. No work was done on the property until August 6, 1964. On that date, site preparation in the form of clearing land began. A consulting engineer and general contractor was paid $682.50 for this work. On August 18, 1964, another contractor, hired to build a building on the property, constructed "batter boards"[2] and leveled the property off. On August 18 or 19, ditches were dug. On August 20, metal rods were installed in the ditches and concrete footings were poured. After approximately 17 yards of concrete had been poured, the owners told the workmen to stop all work. The contractor was paid $160 for his work. The building planned for the site was estimated to cost $25,000. In August, the owner's bank account varied between $790 and $131. In September, the account varied between $131 and $231. After August 20, no further work was done on the property even though the option cut-off date was August 23. The court concluded that when the work was done on the site, the grantee did not have a present intention to complete the building nor the financial ability to do so. It therefore held that the work done did not amount to commencement of construction.

The facts in the instant appeal are entirely different. The work done on the site cost approximately $197,000. Had both tanks been erected the work would have cost approximately $500,000. Work on the second tank was stopped because of this litigation. However, work on the first tank continued long after suit was filed. By November 1980, that tank was virtually complete, and Trailsend had received bids for the remaining work. There was no evidence that Trailsend did not intend to finish what it started nor was there evidence that Trailsend could not afford to build the storage tanks.

The work done by Trailsend at the site fully comports with the definition of starting construction that we announced in *McClung* v. *County of Henrico*, 200 Va. 870, 108 S.E.2d 513 (1959). There, the issue was whether construction had begun within the period of a construction permit. We said it had not begun. In that case, McClung had done little more than pre-construction site preparation. We noted that "there was a total lack

---

[2] A batter board is "[o]ne of a pair of horizontal boards nailed to posts set near the corners of an excavation for a building and used by the builders to indicate a desired level and also as a fastening for stretch strings to mark outlines." Webster's Third New International Dictionary 186 (1968).

of uniting building materials together on the site before the expiration of the permit." 200 Va. at 877, 108 S.E.2d at 518. In the present case, there is ample evidence of the uniting of building materials. Concrete foundations had been poured and the steel sides of the first tank were being installed on the last day of the period provided for in the deed. This, coupled with the evidence of Trailsend's efforts to complete the tanks, causes us to conclude that construction had commenced within the contemplation of the deed.

We will therefore reverse the judgment of the trial court on VHC's claim for specific performance and on Trailsend's cross-bill to quiet title and for specific performance. We will enter judgment for Trailsend on its cross-bill and remand the case to the trial court for entry of a decree consistent with this opinion.

*Reversed and remanded.*

COMPTON, J., dissenting.

Reduced to the essentials, this is a case in which the majority has redetermined the facts on appeal. In my opinion, the trial court applied proper standards to VHC's burden of proof, correctly considered only relevant evidence that did not vary the terms of the deed, and properly decided that construction of facilities for the required purposes had not been "commenced" within the six-year period in question. Furthermore, I disagree with the majority's conclusion that the repurchase option is a condition subsequent. *See School Board* v. *Payne,* 151 Va. 240, 144 S.E. 444 (1928).

The trial court found that last-minute construction of two concrete foundations and one steel tank on a small, inland segment of a 623-acre industrial waterfront site was "work done . . . admittedly for the purpose of getting something on the property before the critical date provided in the deed." The chancellor ruled that this frantic exercise did not amount to "a commencement of construction" within the meaning of the clear terms of the instrument. There was credible, relevant, admissible evidence to support these conclusions of fact and they should not be cast aside on appeal.