## CIRCUIT COURT OF THE CITY OF RICHMOND

Mark F. Rowley,
Adm'r c.t.a. etc.

v.

Robby Gay Nicklis etc. et al.

June 5, 1990

Case No. HA-214-3

By JUDGE T. J. MARKOW

This case is before the court concerning the interpretation of the will of Gaynell Cary Simmons. Specifically, the parties seek to establish whether or not the estate vested in them absolutely or whether a defeasible fee was devised, and whether or not a power of sale of each party is valid, and, if so, how it might be exercised.

Decedent left all of her real and personal property to her granddaughters, defendants Nicklis and Boyce. The operative language of the will devised her property as follows:

> FIRST: I give, devise and bequeath all my estate, real, personal and mixed, to my two granddaughters, Robby Gay Harmon and Clydie Bess White, equally, share and share alike, *in fee simple and absolutely*, except as may be provided otherwise in my will (emphasis added).

Then, in a codicil to the will, the testator modified the devise as follows:

> FIRST: I give, devise and bequeath, equally, my real estate which is my resident home, 3722 Brookside Road, Richmond, Virginia, to my two granddaughters, Robby Gay Harmon and Clydie Bess White.

The will also purports to create the right of beneficiaries to buy the interest of, or sell her own interest to, her sister upon written notice of the intent to do so. By the terms of the will, that right becomes effective at such time as the parties become unable to amicably reside together in the real property. The will also provides that the executor has the right to sell the property at any time after three years have elapsed from the time of probate, and the proceeds are to be divided between the granddaughters, *if an irreconcilable dispute has arisen between the parties.* The codicil to the will also purports to give to defendant Robby Gay Nicklis a right to reside in the property for three years from the date of probate of the will, regardless of the other provisions therein.

The question presented is whether a fee simple estate was devised, and, if so, what type. Additionally, the court must decide what effect the buy-sell agreement language is to have, whether it is enforceable, and how it affects the alleged fee simple estate, as well as the executor's right of sale. In settling these questions, it is necessary for the court to analyze the language of the will and the intent of the testator by scrutinizing *the type of estate devised and then by examining the* validity of the right-to-purchase language. Following that analysis, the court will determine whether the executor has the right to sell the property. Finally, the court will determine what rights of possession and occupation each of the defendants has with regard to the property.

### I. *Estate Devised*

It is well settled that the testator's intent is paramount when construction of the will is necessary, *Carson v. Simmons*, 198 Va. 854, 96 S.E.2d 800 (1957), and is to be sought within the four corners of the document, *Id.* It is equally well settled that a codicil to a will

republishes a will as of the date of the codicil's execution and will supersede any inconsistent provisions in the original will. *Fenton v. Davis*, 187 Va. 463, 471 S.E.2d 372, 379 (1948). "A codicil is a supplement to, or addition to or qualification of, an existing will made by the testator to alter, enlarge *or restrict* the provisions of the will." 94 C.J.S., *Wills*, § 1, page 768 (emphasis added).

The court, therefore, looks to the language of the paragraphs labeled "First" in both the will and the codicil to determine the nature of the estate. The conspicuous change of language from the will to the codicil is very persuasive to the court that a fee simple absolute was not intended to be created. The fact that language of the codicil is substantially the same as that of the will, except for the deletion of the words "fee simple and absolutely," indicates that the testator desired to limit the grant of the initial fee by the subsequent language. The following language expresses a desire that the granddaughters live together in the house, as the testator states:

> *In the event that* my said granddaughters cannot agree, or a serious dispute arises between them that is irreconcilable, then I direct and empower my aforenamed executor in his sole discretion at any time after three years from probate of said will, to sell and convey by deed my said real estate and divide the proceeds after costs of sale between my two granddaughters.

As devised above, the estate given to the beneficiaries was, at the time of the devise, capable if indefeasibly vesting in the sisters; provided that the terminating event did not occur. Therefore, the estate is clearly a species of fee simple; however, the occurrence of a specific series of events would authorize the executor to sell the property, an incident of holding a fee simple estate. The fee, therefore, can be terminated by the described event, which means that the fee must be determinable, with a reversion, which is automatic, going back into the testator's estate. The language that introduces the limitations in this will is a classic example of the fee

simple determinable formula. A condition introduced by "but if" or "in the event that" is usually a fee simple determinable estate. 7A Michie's Jurisprudence, *Estates*, sect. 9.

Thus, it is the holding of this court that the language that follows the words of purchase in paragraph "First" are words of limitation that, when triggered, terminate a fee simple determinable estate given to the sisters. There is no language to suggest that any sort of term of years was intended. In fact, the words of purchase in the codicil (I give, devise and bequeath equally my real estate) are, if unlimited, clearly sufficient to create an estate in fee simple. Va. Code Ann. § 55-11 (1989 Cum. Supp.).

## II. *Buy-Sell Clause*

### A. *Is it per se invalid?*

Ordinarily, limitations on a fee simple absolute estate as void for repugnancy. *Hawley v. Hawkins*, 109 Va. 122, 63 S.E. 560 (1909). The administrator correctly states in memoranda that once a fee simple absolute estate is granted or devised, subsequent attempts to limit or *control disposition* of the property in question is void for repugnancy. *See Dunlop v. Dunlop's Executors*, 144 Va. 297, 231 S.E. 351 (1926). However, when the deed or will purports to withhold some interest in the property from the grantee and complete control is not given to the grantee or beneficiary, then such a clause is valid. *See Bing v. Burrus*, 106 Va. 478, 56 S.E. 222 (1907).

The first question, then, is whether or not the alleged buy-sell power is a restraint or alienation, and then a determination of what it is and what effect it would have. The court finds it necessary to establish the nonabsolute nature of the fee simple estate in order to resolve this question.

This case differs from the *Dunlop* case in two areas. The first is that the court in *Dunlop* found that the testator had devised and bequeathed *absolute* control over the property in question; a fee simple absolute was the estate that descended. In the present case, no such forfeiture arises. As discussed above, that type of estate was

*not* granted in the will of Gaynell Simmons. Second, the testator in *Dunlop* attempted to force a near total forfeiture of the value of the bequest for the violation of the condition subsequent. While a hindrance on an absolute estate is repugnant to the estate, a limitation on an already limited estate is not self-contradictory. Even under the *Dunlop* analysis, the buy-sell right is not restraint on alienation. David Dunlop was absolutely forbidden to sell the estate at any time, under the risk of forfeiting three-quarters of the value of the devise. In this case, the property is fully alienable at any time prior to the exercise of the right, and there is no risk of the type of forfeiture that the law disfavors and seeks to avoid. *Trailsend v. Virginia Holding Co.*, 228 Va. 319, 321 S.E.2d 667 (1984).

Because, as discussed above, the estate devised is not a fee simple absolute, the subsequent limiting of the estate given is not void for repugnancy. It is also not a restraint on alienation. The parties are free to sell to anyone up until the time one offers to buy the interest of the other. There is no forfeiture or narrowing of market that ordinarily accompany a restraint or alienation. *See Dunlop v. Dunlop's Executors*, 144 Va. 297, 132 S.E. 351 (1984).

B. *What is its effect?*

However, the same analysis operates to invalidate the buy-sell power on other grounds. The court can only construe that power as an option because no estate in the property has changed hands. *See* 14A Michie's Jurisprudence, *Options*, § 2. The beneficiaries hold a fee simple estate, and there is no language to create springing or shifting executory interests by which one or the other sister would be divested of her title, nor is there the explicit language needed to create a fee simple subject to a condition subsequent. Only by purchase and sale can title change hands. The language of the will is merely permissive ("each *may* purchase the interest of the other"), and it is not sufficiently explicit to cause the right to rise to the level of a fee simple subject to a condition subsequent; such a fee requires that a remainderman be named to take the divesting estate. *See generally, C.*

*Moynihan, Introduction to the Law of Real Property*, at 36.3F (1962). Therefore, from the four corners of the document, an option is created in the sisters to purchase the interest of the other. 14A, Michie's Jurisprudence, *Options* § 2.

Testator has attempted to require that each beneficiary have a standing offer from the other to buy or sell the balance of the estate to or from her. However, the will is insufficient in its attempt to create an enforceable option.

This option would fail for lack of mutuality. There is no *requirement* that one sister sell to the other, and thus no promise to keep the offer open, which comprises the option. The promise is illusory and not binding because individual interests in the property could be sold to third parties prior to written notice of the desire of one sister to purchase the interest of the other, without so much as a right of first refusal. Thus, there is no binding mutual agreement to create an option. *Id*. Because an option is a personal right, the successor to an option stands in no better stead than her predecessor. *Id*. Without a specified duration and a binding promise to keep a pending sale open for that amount of time, no option exists. *Id*. Additionally, options to repurchase, withheld by a grantor, are disfavored as forfeitures, and, therefore, strictly construed. *Trailsend v. Virginia Holding Corp.*, 228 Va. 319, 325, 321 S.E.2d 667, 676 (1984). All of the above combine to render the power to buy invalid.

### III. *Executor's Power of Sale*

The question regarding the executor's power to sell the property rests upon the type of estate given. As a fee simple determinable, the estate will automatically fail and revert upon the occurrence of the specified event. Thus, the question is whether an irreconcilable difference has arisen.

The court finds that, as a matter of fact, no such event occurred. The alleged "irreconcilable dispute" in this case revolved around the invalid power of purchase or sale, or over the inability of the sisters to live amicably together in the house. However, each, as a coparcener has an equal right to occupy the premises in any

way she desires to, so long as that occupation does not interfere with the use and enjoyment of the other. Thus, there is and can be no irreconcilable dispute as to habitation of one or the other of the co-tenants, as any court of equity would enforce, and thereby reconcile the rights incident to owning an undivided one-half interest in the property. The same is true for a dispute over allowing third parties to reside at the property, which is, again, permissible, so long as it does not disrupt the enjoyment of the other owner.

Additionally, disputes over valuation are clearly settled by the terms of the will and cannot divest the beneficiaries of their estate. And, any dispute over the terms or mechanisms of the power to buy or sell is mooted by the invalidity of that provision of the will.

## IV. *Habitation*

The testator has exhibited her intention that first, both sisters reside in the house if they can mutually agree; and, second, that in any instance, defendant Robby Gay Harmon be permitted to live in the house for at least three years after the probate.

The court does not construe the testator's statements in this regard as merely precatory. She obviously preferred that the sisters could live together in the house. She gave to each the option to purchase. She precluded the executor from selling unless there was a "serious dispute." She reiterated her intention that Robby Gay Harmon live in the house for three years. This expression is more than precatory. It must be read together with her limitation on the executor's power of sale for three years and providing that a purchasing sister would not have to settle for three years.

This testator clearly wished both sisters to live together, but if that was not possible, she intended for Robby Gay Harmon to live in the house for three years. The court construes the grant to Harmon as a tenancy for three years, subject to the right of her sister to also live in the home if there is agreement.

The tenancy permits Harmon to permit another to live on the premises. She is, of course, not to commit nor permit waste.

## V. *Other Arguments*

All other arguments made by defendants in this case are rendered moot by the termination of their fee simple estate.

## VI. *Conclusion*

This court finds that the beneficiaries hold the estate in fee simple determinable. No event has arisen that satisfies the requirement of an irreconcilable dispute that would terminate their fee in the property. Additionally, the buy-sell power fails to be effective, and, therefore, any dispute tied to that power is mooted. If at any time a dispute arises which is unsolvable, then the property will revert back to the executor who, subject to the three years from probate requirement of the will, will sell the property and divide the proceeds between the sisters, as stated in the will.